# CASES

## ARGUED AND DETERMINED

IN THE

## UNITED STATES CIRCUIT COURTS OF APPEALS, THE DISTRICT COURTS, AND THE COURT OF APPEALS OF THE DISTRICT OF COLUMBIA

---

### WINDSOR PRINT WORKS v. C. F. HATHAWAY CO.

(Circuit Court of Appeals, First Circuit. May 17, 1923.)

No. 1602.

1. **Sales ⊙182(1)—Evidence of waiver of defects held for jury.**
   In action for goods sold and delivered, whether defendant waived its right to rescind, or was guilty of laches, *held* for the jury.
2. **Sales ⊙364(7)—Instruction in action for price held proper.**
   In action for goods sold and delivered, instruction as to buyer's duty to inspect and reject, if defective, as affected by the hypothesis that defects were latent, *held* proper.

In Error to the District Court of the United States for the District of Maine; John A. Peters, Judge.

Action by the Windsor Print Works against the C. F. Hathaway Company. Judgment for defendant, and plaintiff brings error. Affirmed.

A. S. Littlefield, of Portland, Me. (C. W. Littlefield, of New York City, on the brief), for plaintiff in error.

John E. Nelson, of Augusta, Me. (Andrews, Nelson & Gardiner, of Augusta, Me., and Perkins & Weeks, of Waterville, Me., on the brief), for defendant in error.

Before BINGHAM, JOHNSON, and ANDERSON, Circuit Judges.

ANDERSON, Circuit Judge. This is a suit on an account annexed to recover $24,044.06 for goods sold and delivered. The defense was rescission and return of the goods because not conformable to the contract, with a counterclaim or set-off for $4,358.09 paid for other goods of the same kind before discovery of alleged latent defects. The defendant prevailed, and had a verdict against the plaintiff for the money defendant had paid.

---

⊙For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes
289 F.—1

The case involved two separate contracts: First, in April, 1920, the defendant ordered 18 cases of percale shirting for delivery in October, November, and December, 1920, admittedly intended for the next season's shirt making. Second, on May 1, defendant ordered 8 more cases for delivery in August and September, or sooner if practicable. The evidence warrants, perhaps requires, a finding that these goods were for the 1920 season, as the defendant was then oversold. Business was then brisk and promising. Samples involving substantial quantities of the goods were shipped to the defendant in July. The order of May 1 for 8 cases was all shipped in August and September, and received in September. For 4 of these cases the defendant paid (apparently in September and October) the above-named sum of $4,358.09. The evidence tended to show that defendant's business, like business in general, began to be bad in the late summer. On August 31 it requested the plaintiff to withhold further shipments, as it had no room for more goods. In September it notified the plaintiff that it would have no use for any of the goods until the next season, and asked for postdating. The plaintiff made some concession as to postdating, but declined to accede to the defendant's repeated requests for cancellation of part of the orders or for a reduction in price. The 18 cases were shipped about the middle of October, and received by the defendant on October 29. Thereupon the defendant complained that it was not satisfied with the appearance and the finish; that when the cloth was put into the drying room it turned a little yellow, and asked the defendant's opinion on this point.

Then ensued a long discussion, oral and written, as to the quality of the goods.

In January, 1921, the defendant returned the goods to the plaintiff, which received them without prejudice to its right to insist that the sale was valid.

The gist of the case is whether the defendant had a right to rescind. The plaintiff does not deny that there was evidence for the jury that the goods did not conform to the contract. Its main contentions are:

(1) That at the trial the defendant was permitted to offer evidence of defects not set up at the time of the attempted rescission.

(2) That as substantial samples of the goods, testified by the defendant's own witnesses to be like the mass of goods received on October 29, were delivered to the defendant in July, 1920, so that the defendant might by tests have then ascertained whether the goods were up to the contract, the plaintiff was, as matter of law, entitled to a verdict for all the goods sold and delivered.

(3) That, even if the right to rescind as to the 18 cases was for the jury, yet, as matter of law, the defendant had no right to rescind the contract as to the 8 cases covered by the order of May 1, 1920, all of which had been delivered in August and September, and 4 of which had been paid for.

(4) That the court misdirected the jury with relation to the degree of diligence required by a party who undertakes to rescind a contract of sale.

[1] 1. Plaintiff's first contention, that the rescinding party cannot shift its ground, is based on such cases as Oakland Sugar Mill Co. v.

Wolf Co., 118 Fed. 239, 55 C. C. A. 93; Hess v. Kaufherr, 128 App. Div. 526, 112 N. Y. Supp. 832; Granger v. Universal Machinery Corp., 193 App. Div. 234, 183 N. Y. Supp. 711; Rochevot v. Wolf, 96 App. Div. 506, 89 N. Y. Supp. 142; Littlejohn v. Shaw, 159 N. Y. 188, 53 N. E. 810.

We think this contention cannot be sustained. Careful examination of the voluminous record, including the correspondence between the parties, discloses no such variance between the grounds for rescission alleged by the defendant in October and November, 1920, and those supported by its evidence offered at the trial, as to bring this case within the scope of the principle laid down in the cases cited and relied upon by the plaintiff. It cannot be said that, as matter of law, the defendant waived any right it had to insist on defects in the goods. Clement v. L'Institut, 95 Me. 493, 496, 50 Atl. 376.

2. It was plainly a question of fact for the jury whether the defendant's claim, first made on October 29, 1920, that the goods were bad, was honestly and soundly grounded on real defects, or was, as the plaintiff claimed, caused by a radical drop in market prices. The fact that samples of the goods, delivered in mass on October 29, had been received in July, so that the defendant might, if it had then tested those samples, have discovered the alleged latent defects, would not warrant the court in ruling that, as matter of law, the defendant was guilty of laches. There was evidence tending to show that, when these samples were received, they were put away upon the shelves and were not actually tested. It was for the jury to say, under all the circumstances of the case, whether this evidence was true, and also to determine to what extent the alleged defects were latent—not discoverable by such incidental examination as a workman receiving and putting away such goods for future use would ordinarily make.

3. Somewhat closer is the question as to whether the defendant seasonably asserted a right to rescind the sale of the 8 cases ordered on May 1, delivered to it in August and September, and about half paid for. But, on careful examination of the record, we think the court below was right in regarding this also as a question of fact for the jury.

There was evidence tending to show that the goods, in all 26 cases, were substantially alike; that the same defects as to color, finish, and in other particulars, alleged to have been first discovered when the 18 cases were opened on October 29, were, on tests fairly made and participated in by the plaintiff itself, common to all the 26 cases. There is also evidence tending to show that these defects were latent, and the case was submitted to the jury on the theory of latent defects, not actually discovered nor discoverable by ordinary inspection. It was for the jury to determine whether there were defects, and, if so, whether they were latent.

Plainly, if the goods were, as they might be found to be, all alike, and if the defects were latent, so that the plaintiff did not, and was not under legal obligation to, discover these defects until October 29, then the defendant's right to rescind was not lost.

[2] 4. As bearing upon the question of the defendant's duty

promptly to examine and reject the goods, if there were cause therefor, the jury were instructed by the court as follows:

"It has been urged by counsel for plaintiff that he, the defendant, had time enough in which he could have found out about the condition of these goods, between the time when they first began to arrive and October 29th, and it is apparently true that there was ample time, if the defendant desired to make experiments and tests on the goods during that period, and to have found out whether or not they were good or bad. But it doesn't seem to me that this is the exact criterion, the exact measure of the rights of the parties, because these goods came to the defendant with the implied condition that they were suitable. The defendant was not obliged, on receipt of the first goods, immediately to commence his experiments and tests; he was obliged to give careful attention to the goods, to make a critical and careful examination of them; but he had a certain right, at least, to rest upon the fact that there were no latent defects in the goods that he was bound to test and examine for. I think his rights in respect to rescission began after he found out the first things concerning the quality of the goods; as soon as he found out something that put him on his suspicion as to the condition of the goods. I think, then, that his activities after that point were more important, provided he, before that time, acted intelligently and in good faith touching the matter of the goods.

"Of course a man cannot receive goods and in bad faith let them hang around an unreasonable length of time. He has got to have, all through the thing, the best of faith in the matter, and act in relation to the high standards of business, with a conscientious attitude in those respects. If there was not any bad faith, and if the defendant gave a careful examination of those goods and nothing was apparent under such an examination, and if the first time was October 29th, when the goods were all together and the mass of them produced this odor, and if, up to that time, he had exercised perfectly good faith in the matter, I think the question arises if, after that time, he did, as a matter of law and a matter of fact, exercise and carry out a rescission of the contract."

"And I advise you as a matter of law that, the other conditions I have described being present as to good faith, prior to October 29th, and at that visit in November in New York, the arrangements having been made for further tests, under the law the defendant was not obliged to begin his rescission arrangements until a reasonable time after that."

In argument, the plaintiff's learned counsel stresses what the court said as to bad faith; he contends that the jury were told, in effect, that there was no obligation on the defendant to make an examination of the goods, unless the defendant acted in bad faith. He insists that "a breach of duty is equally injurious whether the seller acted in good faith or bad faith" (Marston v. Knight, 29 Me. 341), and urges that the defendant ought to have discovered the defects at or shortly after receiving samples of them.

But this argument overlooks the real gist of the case that the court was submitting to the jury under a long and careful charge. The defendant's whole case of a right to rescind rested on the proposition that these goods were tainted by latent defects. It was, as already noted, plainly a question of fact for the jury whether there were, or were not, such latent defects. If there were, then there was evidence that the goods were all alike; that the defendant did not in fact discover the latent defects until after October 29; so that, eliminating bad faith, there would be no obligation for the defendant to make tests to discover whether goods which it had no present occasion to use were or were not conformable to the terms of the contract under which

it had purchased them. The instruction that the defendant "was obliged to give careful attention to the goods, to make a critical and careful examination of them," was sufficiently favorable to the plaintiff. There was no error in adding that the defendant "had a certain right, at least, to rest upon the fact that there were no latent defects in the goods that he was bound to test and examine for." While the instruction:

"And I advise you as a matter of law, that, the other conditions I have described being present as to good faith, prior to October 29th, and at that visit in November in New York, the arrangements having been made for further tests, under the law the defendant was not obliged to begin his rescission arrangements until a reasonable time after that,"

might (taken from its context) seem to eliminate any question of fact as to diligence in ascertaining the quality of the goods before the eighteen cases were received on October 29, it is not fairly open to that interpretation, when read as part of a long charge, in which the jury were fully and accurately instructed that latent defects are such as "cannot be detected by careful, ordinary scrutiny or examination, and which develop unexpectedly upon further use, experiment or test." The jury must have understood that the plaintiff was entitled to recover unless the defendant had shown such latent defects as to render the goods unsuitable for shirtings. We find nothing in the cases relied upon by the plaintiff inconsistent with the rulings made in the District Court. Pitcher v. Webber, 103 Me. 101, 68 Atl. 593; Noble v. Buswell, 96 Me. 73, 51 Atl. 244; Cutler v. Gilbreth, 53 Me. 176; Kingsley v. Wallis, 14 Me. 57.

The judgment of the District Court is affirmed, with interest and costs for the defendant in error.