## 13640

### LYTLE v. SOUTHERN RY.—CAROLINA DIVISION

(171 S. E., 42)

*Messrs. McDonald, Macaulay & McDonald* and *Frank G. Tompkins,* for appellant,

Messrs. *Gaston, Hamilton & Gaston, Wilson & Wilson* and *Thos. F. McDow,* for respondent,

May 17, 1933.

The opinion of the Court was delivered by MR. CHIEF JUSTICE BLEASE.

In a former appeal to this Court in this cause (*Lytle v. Southern Ry.—Carolina Division,* 152 S. C., 161, 149 S. E., 692), we affirmed the order of the Circuit Court overruling a demurrer of the defendant to the complaint. We held, quoting the syllabus, as follows: "Action may be maintained by legal representative for wrongful death of deceased employee in North Carolina under Federal Employers' Liability Act (45 U. S. C. A., §§ 51-59) for benefit of employee's mother, where there is no father or children and where woman married to deceased has deserted him without cause and eloped with adulterer."

In the judgment of this Court, however, we said: "Let the defendant be allowed to make a motion, if so advised, to make the widow a party.  *  *  * "

The defendant did not take advantage of the opportunity to have the widow, Sallie Lytle, brought into the suit.

On the trial of the case, the presiding Judge, Honorable C. J. Ramage, followed our decision on the demurrer, and refused the defendant's motion for the direction of a verdict in its favor, and submitted the cause of action to the jury. The result of the trial was a verdict in favor of the plaintiff for the sum of $2,200.00, on which verdict there was a proper entry of judgment.

From the adverse judgment, the defendant has appealed on several exceptions. All of these, with the exception of one, relate to the refusal to grant the defendant's motion for a directed verdict in its favor. The remaining exception complains of error on the part of the trial Judge in giving certain instructions to the jury at the request of the plaintiff.

The same legal position contended for by the appellant in its exception as to the charge to the jury is the foundation, also, of all its exceptions, save one, relating to the refusal to direct a favorable verdict for the appellant. A disposition, therefore, of the exception complaining of the instructions given will dispose of the similar question raised in other exceptions.

The instructions complained of were these: "I charge you in this connection that where a wife, a married woman, elopes with an adulterer and willfully and without just cause abandons her husband and refuses to live with him, and is living in adultery with another, that the unfaithful wife has no rights as a widow, and is not entitled to benefit from the wrongful death of her deceased husband, that the mother in the absence of children is the proper person for whose benefit the action should be brought."

At the outset we are met with the position of the respondent that the legal principles announced by the trial Judge were, and are, "the law of the case," and for that reason we are bound, as was the trial Court, by the former decision.

With this view we are in accord, but we deem it proper to say something more in support of the holding of the Court in the former appeal.

The exceptions of the appellant reiterate the contention of the former appeal that "no divorce having been granted or shown, Sallie Lytle was the legal surviving wife and widow of plaintiff's intestate, under the express provisions of the Federal Employers' Liability Act of Congress (45 U. S. C. A., §§ 51-59), and no action could be brought or maintained for his mother or any other beneficiary, there being no surviving children."

It is argued in this connection that "no unfaithful conduct on the part of such childless widow, as alleged in the complaint, will forfeit her beneficial right of action under said Federal Act or vest any right of action in favor of the intestate's mother."

Recognizing our duty to seek an interpretation of the terms employed in the Federal statutes in the decisions of the Federal Supreme Court, if decision can be found in point, we have carefully examined the authorities submitted in support of appellant's position, together with other decisions of that Court which, as we think, have some bearing in this consideration.

In the case of *Chicago, B. & Q. R. Co. v. Wells-Dickey Trust Co.,* 275 U. S., 161, 48 S. Ct., 73, 72 L. Ed., 216, 59 A. L. R., 758, in construing Section 1 of the Federal Employers' Liability Act (45 U. S. C. A., § 51), it was said that: "The cause of action as there expressed, *accrues* to the widow and children, if *either* survives. It accrues to the parents if *neither* widow nor child survives." (Italics ours.) But this decision affords no light on the meaning of the term "widow" as used in the statute; and other Federal Supreme Court decisions are only indirectly in point.

There is, however, a fundamental principle of statutory construction that "it is the duty of the Court to ascertain the meaning of the legislature from the words used and the subject-matter to which the statute relates, *and to restrain*

*its operation within narrower limits than its words import* if the Court is satisfied that the literal meaning of its language would extend to cases which the legislature never intended to include in it." (Italics ours.) *Petri v. Commercial Nat. Bank,* 142 U. S., 644, 12 S. Ct., 325, 326, 35 L. Ed., 1144; *The Lessee of Brewer v. Blougher,* 14 Pet., 178, 10 L. Ed., 408. Or, as expressed in slightly different language, in *Reiche v. Smythe,* 13 Wall., 162, 164, 20 L. Ed., 566, it is said: "If it be true that it is the duty of the Court to ascertain the meaning of the legislature from the words used in the statute and the subject-matter to which it relates, *there is an equal duty to restrict the meaning of general words,* whenever it is found necessary to do so, in order to carry out the legislative intention." (Italics added.) We find, also, the instructive comment of Chief Justice Taney, in *Gayler et al. v. Wilder,* 10 How., 477, 496, 13 L. Ed., 504: *"It is not by detached words and phrases that a statute ought to be expounded.* The whole act must be taken together, and a fair interpretation given to it, neither extending nor restricting it beyond the legitimate import of its language, and its obvious policy and object." (Italics ours.)

Consistently with the foregoing statements, the cases of *New Orleans & N. E. R. Co. v. Harris,* 247 U. S., 367, 38 S. Ct., 535, 536, 62 L. Ed., 1167, and *Southern R. Co. v. Miller* (C. C. A., 4th Circuit), 267 F., 376, 381, certiorari denied 254 U. S., 646, 41 S. Ct., 15, 65 L. Ed., 456, while not conclusively in point, afford the clear implication that the term "widow," as used in the Federal Employers' Liability Act, should be given a *restricted* rather than a literal meaning, so as to carry into effect the obvious remedial object of the statute to create a right of action against the employer for the benefit of persons having either in law or morals some claim of right to the support at the hands of the deceased employee. Thus, in the *Harris case, supra,* it is pointed out that "no claim is made that rights and liabilities consequent upon marriage

had disappeared under local law." Similarly, in the *Miller case, supra,* it is remarked that "nothing appears to show that she [the widow] might not at any time have enforced her conjugal rights under the laws of Virginia."

As a further consideration justifying the conclusions we have reached, the term "widow" has been defined in the dictionaries: "v t. 1. To make a widow. 2. To deprive of something desirable or that suggests a husband's companionship or support. * * * n. A woman who has lost her husband by death." A definition of "loss" is given as "to be deprived or bereaved of"; and a definition of "bereave" is: "To deprive, as of something valuable or beloved." Also, from a standpoint of judicial interpretation, it has been held " 'widow,' as used in the Tennessee homestead laws exempting as a homestead certain property for the benefit of a decedent's 'widow,' etc., means a person who was a member of his family in a legal sense when he died, and does not include one who has forfeited her rights as a member of his family by eloping before her husband's death and living with another man." See Words and Phrases, First Series, Vol. 8, at page 7457, citing *Prater v. Prater,* 87 Tenn., 78, 9 S. W., 361, 10 Am. St. Rep., 623. To similar effect is the decision in *Richard v. Lazard,* 108 La., 540, 32 So., 559, where it was said that the term "widow" as used in the statute will not include an unfaithful wife who has abandoned her husband.

The declared policy of this State in regard to the husband's duty in the matter of supporting his wife was stated by Chancellor Dargan in the early case of *Hair v. Hair,* 10 Rich. Eq. (31 S. C. Eq.), 163, and reaffirmed in *State v. Lancaster,* 135 S. C., 412, 133 S. E., 824: "If she elopes, or commits adultery, or violates or omits to discharge any of the important hymeneal obligations which she has assumed upon herself, the husband may abandon her without providing for her support; and this Court would sustain him in such a course of conduct."

The cases cited in appellant's argument, namely, *Boyce v. Owens,* 1 Hill (19 S. C. Law), 8; *McCarty v. McCarty,* 2 Stob. (33 S. C. Law), 6, 47 Am. Dec., 585; *Duke v.' Fulmer,* 5 Rich. Eq. (26 S. C. Eq.), 121; *McCreery v. Davis,* 44 S. C., 195, 22 S. E., 178, 28 L. R. A., 655, 51 Am. St. Rep., 794; *Davis v. Whitlock,* 90 S. C., 233 73 S. E., 171, Ann. Cas., 1913-D, 538; *Jakar v. Jakar,* 113 S. C., 295, 102 S. E., 337; *Scheper v. Scheper,* 125 S. C., 89, 118 S. E., 178; *State v. Sellers,* 140 S. C., 66, 134 S. E. 873, are authorities to the effect that the marriage of Alf Lytle to Sallie Lytle created a legal status, continuing in the absence of a divorce until his death, which was a bar to his entering into any other marriage. But it would be an absurdity to say that the deserting wife, whose misconduct barred her from asserting any rights to claim benefit of the marriage during her husband's lifetime, could in any proper sense be regarded as bereaved of her husband by his death.

One other exception, the sixth, remains to be briefly noticed. Therein, it is contended that if the faithless wife, Sallie Lytle, was not entitled to recover under the statute, nevertheless the mother of the intestate was not entitled to recover, since the evidence showed that th intestate at the time of his death had been married to Maggie Mackey, also called Maggie Lytle, who survived him, and she was entitled to recover on account of the death of the intestate. Clearly, there is no reasonable basis for this position, since the purported marriage of the intestate to Maggie, even if the same was established by the evidence, was void for the reason that no divorce of the marriage of the intestate with Sallie Lytle had occurred. The forfeiture of the rights of Sallie, because of her adulterous conduct, inured to the benefit of the intestate's mother, not to Maggie Lytle, whose marriage was not a legal one.

It follows, on applying the foregoing considerations to the particular facts disclosed by the evidence in this case, that

the deceased employee, Alf. Lytle, did not leave a "widow" entitled to claim the benefit of the provisions of the Federal Employers' Liability Act, and hence, under the alleged and proven circumstances, the right of recovery, conferred by the Act, accrued solely to his mother.

The judgment of this Court is that the judgment below be, and the same is hereby affirmed.

MESSRS. JUSTICES STABLER and CARTER concur.

MR. JUSTICE BONHAM and MR. ACTING ASSOCIATE JUSTICE W. C. COTHRAN concur in result.

MR. ACTING ASSOCIATE JUSTICE W. C. COTHRAN (concurring in result) : I concur in the result, believing that the questions raised in this appeal must be governed by the former appeal, reported in 152 S. C., 161, 149 S. E., 692, as the law of the case.

MR. JUSTICE BONHAM concurs.