## DOW v. CARNEGIE-ILLINOIS STEEL CORPORATION.

### No. 9411.

Circuit Court of Appeals. Third Circuit.

Argued Nov. 7, 1947.

Decided Jan. 22, 1948.

778

Hymen Schlesinger, of Pittsburgh, Pa., for appellant.

Ira Hill, of Pittsburgh, Pa. (Reed, Smith, Shaw & McClay, of Pittsburgh, Pa., on the brief), for appellee.

Before BIGGS, GOODRICH, and MC-LAUGHLIN, Circuit Judges.

BIGGS, Circuit Judge.

The suit at bar is one brought under the Jones Act, 46 U.S.C.A. § 688, by the administratrix of Paul Dow, a seaman employed by the defendant, Carnegie-Illinois Steel Corporation, for damages resulting from his death from menigococcic meningitis. The complaint alleges that the defendant failed to furnish Dow with proper medical treatment and that by reason of this failure he died. The trial court permitted the case to go to the jury which rendered a verdict in favor of the defendant. Judgment was entered for the defendant and, after a motion for a new trial was denied, the plaintiff appealed.

The evidence from which the jury could have found the defendant to be guilty of the negligence charged was slight, albeit probably sufficient [1] to go to the jury. The defendant does not contend otherwise here. The triers of fact would have been justified in finding the defendant not guilty of negligence. We would be of the opinion that the judgment should stand were it not for certain factors which arose from the nature of some of the testimony presented. The trial court permitted evidence respecting certain marital difficulties which arose between plaintiff and her husband.

The defendant called the plaintiff as for cross-examination and questioned her as to the amount of contributions which the decedent had made to her and to their child. The plaintiff also was asked whether she and her husband were living together at and prior to the time of Dow's death. From her answers it appeared that she had obtained a legal separation from her husband, a divorce from bed and board in 1942; that at this time her husband had filed a suit for absolute divorce against her which was refused him. It appeared further that she had separated from her husband in March, 1941, when her divorce action was filed; that she and her husband remained separated until May, 1944, about seven months prior to Dow's death. The plaintiff then returned to her husband's home with their child and lived with him; that she had been awarded $90 a month and the child $36 a month by support orders, but that after her return she and her husband had "shared everything". Under the law of Pennsylvania a support order in favor of a wife is no longer effective after a recon-

---

[1] The court below stated in its opinion on the plaintiff's motion for a new trial, 70 F.Supp. 1016, 1018, "The evidence of negligence was not strongly in favor of the Plaintiff."

ciliation has taken place and the wife has returned to her husband. See the language of the Act of May 2, 1929, 23 P.S.Pa. § 47, which provides that the " * * * allowance [of support] shall continue until a reconciliation shall take place * * *". It is clear also that as a practical matter a support order in favor of a child living apart from its father is no longer effective after the child has returned to its father's house. All of the testimony referred to in this paragraph was received over the vehement objections of plaintiff's counsel.

We are concerned with two questions which may be phrased as follows: (1) Was this evidence, or any of it, admissible?; and (2) If it was inadmissible, did the receipt of it by the jury substantially prejudice the plaintiff's case? See Rule 61 of the Federal Rules of Civil Procedure, 28 U.S.C.A. following section 723c.

■ As to (1), the Jones Act provides that the personal representative of a seaman may maintain an action for damages at law with trial by jury " * * * and in such action all statutes of the United States conferring or regulating the right of action for death in the case of railway employees shall be applicable." Section 1 of the Federal Employers' Liability Act, 45 U.S.C.A. § 51, states that a common carrier by railroad " * * * shall be liable in damages to any person suffering injury while he is employed by such carrier in such commerce, or, in case of the death of such employee, to his or her personal representative, for the benefit of the surviving widow * * * and children of such employee * * *". In proceedings brought under the Federal Employers' Liability Act the rights and obligations of the parties depend on the Act and the applicable principles of common law. New Orleans & N. E. R. Co. v. Harris, 247 U.S. 367, 38 S.Ct. 535, 62 L.Ed. 1167. It follows, therefore, that the measure of damages is as indicated by the Act and by the federal law.

■ An examination of the authorities shows that the measure of damages in a suit brought by a widow under the Federal Employers' Liability Act is the same as that applicable in a Lord Campbell's Act[2] suit. The historical reason for the application of this measure of damages doubtless lies in the use of the word "benefit" in both acts. The "benefit" is the amount which the jury finds the dead man would have given to his wife and other dependents had he lived. A number of pertinent authorities are collected in the annotations following Belzoni Hardwood Lumber Co. v. Langford, 127 Miss. 234, 89 So. 919, 18 A.L.R. 1406, 1407, 1409, et seq., and in the note to Lytle v. Southern Railway Co., 171 S.C. 221, 171 S.E. 425, 90 A.L.R. 915, 920 et seq. See also the citation of authorities in notes 895–897 and 899, 900 to 45 U.S.C.A. § 51. It would prolong this opinion to an unnecessary and unhelpful length to discuss many of the cases. A few examples will illustrate the point at issue.

It was held in Fogarty v. Northern Pac. R. Co., 85 Wash. 90, 147 P. 652, L.R.A.1916C, 803, that abandonment by a man of his family will not defeat a recovery by them for his death under the Federal Employers' Liability Act. In Holland v. Closs, Tex. Civ.App., 146 S.W. 671, the court ruled that evidence of abandonment could be considered by the jury in determining the amount of pecuniary loss to the dead man's wife and child who had brought suit under the Act. An almost similar ruling was made in Gilliam v. Southern R. Co., 108 S. C. 195, 93 S.E. 865. In Dunbar v. Charleston & W. C. R. Co., C. C., 186 F. 175, in a suit under the Federal Employers' Liability Act, evidence that the wife, suing for the death of her husband, was temporarily separated from him was rejected. In Philadelphia & R. R. Co. v. Briscoe, 3 Cir., 279 F. 680, 683, a suit under the Act, this court, in effect, held that an insinuation that the plaintiff was unfaithful to her husband was too remote to affect the amount of money which he would have given to his family and to his children if he had lived. Compare Harrison v. London and N. W. R. Co. 1 Cab & El. (Eng.) 540, in which the husband sought to maintain a Lord Campbell's Act suit for the death of his wife. The court ruled for the defendant holding that a husband who had not spoken to his wife

---

[2] "The Fatal Accidents Act", 1846, 9 & 10 Vict. c. 93. See "The Complete Statutes of England", Vol. 12, p. 335 et seq.

for over eight years did not have a reasonable prospect of pecuniary benefit from her and therefore could not maintain an action for damages for her death. See in particular Wood v. Philadelphia, B. & W. R. Co., 1 Boyce 336, 24 Del. 336, 76 A. 613, in which a widow brought action pursuant to the provisions of Chapter 31, Vol. 13, p. 28, as amended by Chapter 210, Vol. 22, p. 500, Laws of Delaware, to recover for her husband's death in a railroad accident, he having been a postal clerk employed by the Post Office Department. Evidence was offered to show that the husband had applied for an absolute divorce and that the widow was living separate and apart from her husband at the time he was killed. The Superior Court of Delaware ruled, by Woolley, J., later a judge of this court, that this evidence was inadmissible.

■ An examination of the authorities demonstrates that there are no clear signs as to what evidence respecting marital happiness or unhappiness may or may not be admissible. It is clear, of course, that a final decree of absolute divorce prior to the death of the husband will bar recovery by the wife either under the Federal Employers' Liability Act or under a Lord Campbell's Act since the plaintiff would have no locus standi. Under almost all other conceivable circumstances, however, recovery has been allowed by some courts though aggravated conditions or causes of separation between husband and wife have served to mitigate damages. While it may be doubted that the human mind, whether empaneled in a jury box or not, can cast up with any degree of accuracy degrees of domestic bliss or marital unhappiness in terms of money, this is the course upon which our law, whether federal or State, has projected itself, and we may not now turn it into a new and perhaps more profitable direction. Obviously a limit must be put on the remoteness of the circumstances offered by a defendant to show that the plaintiff would have received little or no "bene-

fit" from her husband if he had continued in existence. We think that the evidence offered in the case at bar exceeds that permissible limit.

■ In the instant case the plaintiff and the child had returned to Dow's home seven months prior to his death. The causes, whatever they were, which had effected the separation had ceased to operate months prior to Dow's death. The support orders were no longer effective. To hold that an unsuccessful action for absolute divorce, begun and terminated several years before a complete reconciliation of a husband and a wife, would serve to demonstrate a disposition on the part of the husband to withhold funds which he might otherwise have given his wife if he had lived is to put speculation on speculation, effecting a mere chimera of evidence. The matter was well summed up by Judge Woolley in Wood v. P. B. & W. R. R. Co., supra, 24 Del., 1 Boyce, at p. 341, 76 A. at p. 614, where, as we have stated, the husband had instituted a divorce proceeding against the wife but no divorce had been granted and the proceeding had been closed by the husband's death. In rejecting evidence relating to the divorce action offered to show that the wife would have received little or no benefit from her husband if he had lived, the learned Judge stated, "In our judgment it is impossible to put in evidence something that was, but is not now." This observation is apposite to the case at bar. Accordingly, it is our view that the evidence objected to should have been excluded.[3]

We come now to the second question; whether the objectionable evidence could have prejudiced the plaintiff's case in any substantial way. The defendant maintains that the testimony going to prove the negligence of the defendant was of so slight a weight that the jury could have found that there was no liability under the Jones Act and that it was for this reason that the jury rendered a verdict for the defendant.[4] That

---

[3] We note from the transcript of the testimony that evidence was offered as to Dow's funeral expenses and that the court below charged the jury that they might consider this evidence in ascertaining the amount of damages. This evidence is inadmissible. See our decision in Philadelphia & R. R. Co. v. Marland, 239 F. 1, 10, 11, cert. den. 245 U.S. 671, 38 S.Ct. 191, 62 L.Ed. 540.

[4] The defendant does not maintain that the court below erred in sending the case to the jury on all the evidence.

the jury could have reached a verdict for the defendant because the evidence of negligence was unconvincing is clear, but we cannot say that the jury reached its verdict on such a ground. It may have concluded that the wife should not reap the benefit of the Jones Act because she once had left her husband and he had sued her for a divorce. It would not have been logical for the jury to have imputed the wife's actions to the child but juries do not always proceed upon logical grounds. We think that the plaintiff's case could have been prejudiced by the inadmissible evidence. The possibility of substantial prejudice is enough to invalidate the verdict.

Accordingly, the judgment will be reversed.