## Carbaugh, Trustee, v. Grove et al.

*Ullman & MacBride,* for plaintiff.

*James A. Strite, George S. Black, Swope, Brown & Swope* and *Wingerd & Long,* for defendants.

WINGERD, P. J., August 18, 1952.—Defendants presented a petition to this court under Pa. R. C. P. 4005 praying that the court approve certain written interrogatories to be answered by plaintiff and to allow service of them upon plaintiff. The interrogatories submitted with the petition are as follows:

"1. When were you and Bruce C. Carbaugh married?

"2. At what places and during what time did you and Bruce C. Carbaugh live together as man and wife?

"3. After you and Bruce C. Carbaugh were married, were you at any time separated?

"4. If your answer to number 3 be yea, state at what times and for how long you were separated and where each of you lived during any such period of separation.

"5. Where was Bruce C. Carbaugh employed during the five years immediately preceding his death?

"6. Was Bruce C. Carbaugh unemployed during any part of the five years immediately preceding his death?

"7. What were the earnings of Bruce C. Carbaugh from his employment during the five years immediately preceding his death?

"8. What contributions did Bruce C. Carbaugh make to your support during the five years immediately preceding his death?

"9. Did you consult a lawyer or a justice of the peace concerning the failure of Bruce C. Carbaugh to support you at any time during the five years immediately preceding his death?

"10. If your answer to number 9 be yea, what lawyer or justice of the peace?

"11. Did you at any time make a complaint before a justice of the peace at any time after you and Bruce C. Carbaugh were married charging him with failure to support you?

"12. If your answer to number 11 be yea, when and before what justice of the peace?

"13. What contributions did Bruce C. Carbaugh make to the support of his father, David Carbaugh, and his mother, Mabel Carbaugh, during the five years immediately preceding his death?

"14. Was Bruce C. Carbaugh ever arrested and charged with a crime?

"15. If the answer to number 14 be yea, when and where was he arrested and with what crime was he charged?

"16. Was Bruce C. Carbaugh ever charged with an offense under The Vehicle Code for which summary conviction was a proper remedy?

"17. If the answer to number 16 be yea, when and where was he so charged and for what offense?

"18. Where did Bruce C. Carbaugh spend the evening of July 2, 1949, and the morning of July 3, 1949, prior to the accident referred to in the amended complaint?"

This is an action for wrongful death and plaintiff is the widow of decedent.

Plaintiff filed no objections to the first, second, thirteenth and eighteenth interrogatories. Objections were filed to all of the others.

Pa. R. C. P. 4005 is subject to the limitations provided by Pa. R. C. P. 4011 and among these limitations are that no discovery shall be permitted which would disclose facts which "(1) are not relevant and material to the subject matter of the pending action; (2) are not competent or admissible as evidence".

Interrogatories 3, 4, 9, 10, 11 and 12 have to do with the domestic relations of plaintiff with decedent. Interrogatories 3 and 4 specifically ask if plaintiff and decedent were separated at any time after they were married and 9, 10, 11 and 12 ask whether or not plaintiff at any time consulted a lawyer or justice of the peace during the five years immediately preceding the decedent's death concerning a failure on the part of

decedent to support plaintiff and whether at any time since marriage to decedent plaintiff made a complaint before a justice of the peace charging decedent with failure to support her. We feel that these questions have to do with irrelevant matters as plaintiff's complaint definitely avers that plaintiff and decedent were living together at the time of the occurence which caused his death and that at that time he was contributing at least $15 per week to the support and maintenance of plaintiff. If they had been previously separated and if they had previously had difficulty concerning the amount which decedent should contribute to the support of plaintiff and neither of these situations were in existence at the time of decedent's death, we cannot see how they could cast any light on the amount which decedent would have contributed to the support of plaintiff had he lived. Consideration of the effect of such matters is merely speculation and they are not proper evidence to be submitted for consideration by a jury in determining the amount of support which plaintiff lost through the death of her husband. Dow v. Carnegie-Illinois Steel Corporation, 165 F.(2d) 777, 780 says:

"Obviously a limit must be put on the remoteness of the circumstances offered by a defendant to show that the plaintiff would have received little or no 'benefit' from her husband if he had continued in existence. We think that the evidence offered in the case at bar exceeds that permissible limit.

"In the instant case the plaintiff and the child had returned to Dow's home seven months prior to his death. The causes, whatever they were, which had effected the separation had ceased to operate months prior to Dow's death. The support orders were no longer effective. To hold that an unsuccessful action for absolute divorce, begun and terminated several years before a complete reconciliation of a husband

and a wife, would serve to demonstrate a disposition on the part of the husband to withhold funds which he might otherwise have given his wife if he had lived is to put speculation on speculation, effecting a mere chimera of evidence. The matter was well summed up by Judge Woolley in Wood v. P. B. & W. R. R. Co., supra, 24 Del., 1 Boyce, at p. 341, 76 A. at p. 614, where, as we have stated, the husband had instituted a divorce proceeding against the wife but no divorce had been granted and the proceeding had been closed by the husband's death. In rejecting evidence relating to the divorce action offered to show that the wife would have received little or no benefit from her husband if he had lived, the learned Judge stated, 'In our judgment it is impossible to put in evidence something that was, but is not now.' This observation is apposite to the case at bar. Accordingly, it is our view that the evidence objected to should have been excluded."

Interrogatories 5, 6 and 7 relate to the employment and earnings of decedent for five years immediately preceding his death. The scope of these questions clearly extends over too long a period. Earnings which reflect earning capacity are obviously only relevant for a short time prior to decedent's death. There are too many factors involved for evidence of earnings several years prior to a decedent's death to cast any light upon his earning capacity at the time of his death and his probable future earnings if he had lived. This matter is clearly discussed in Rooney v. Maczko, 315 Pa. 113, 119, wherein the then Mr. Justice Maxey, later chief justice, states:

"What a man was able to earn at his regular occupation a reasonably brief time before receiving an injury is evidence from which, with other evidence, a jury may infer what his earning power was just before the injury. It is a matter of common knowledge that while rates of wages do not ordinarily change suddenly and,

barring sickness or accident, a man's earning power is not likely to be suddenly diminished, yet during a period of years there may be a substantial change both in rates of wages and in actual earning power. 'Evidence of what a man earned several years before the basic event must be excluded as possessing too little probative value as to the earning power impaired." (Quoted with approval in Kenmuir v. Pittsburgh, 347 Pa. 156, 157.)

In the same manner evidence of where a decedent was employed and whether or not he was employed continuously during the five years immediately prior to his death involves so many factors, as to why he was employed at a particular place and why he was or was not employed, that it has no real probative value in relation to his earning power at the time of his death and the amount he would have earned had he lived. It's effect, if any, in determining such matters is purely speculative. Furthermore, if allowed, it opens up so many collateral matters necessarily spread over such a length of time that on that ground alone it should be held inadmissible.

Interrogatory 8, which asks what contributions decedent made to the support of plaintiff during the five years immediately preceding decedent's death, has to do with evidence which can only be offered as bearing upon earning capacity: Gentile et al. v. Philadelphia & Reading Ry., 274 Pa. 335, 339; and is objectionable for the same reasons as interrogatories 5, 6 and 7.

Interrogatories 14, 15, 16 and 17 are allowed but will not be allowed at the trial unless the answers show a habit of conduct which would affect decedent's earning capacity: Randolph, admr., v. Campbell, 68 D. & C. 392, 394, 396.

Now, August 18, 1952, the prayer of defendant's petition presented under Pa. R. C. P. 4005 is granted

as to interrogatories 1, 2, 13, 14, 15, 16, 17 and 18 and is refused as to interrogatories 3, 4, 5, 6, 7, 8, 9, 10, 11 and 12.