(900 P.2d 865)
No. 70,975

In the Matter of the Estate of ESTHER TUBBS, deceased.

Opinion filed August 4, 1995.

*Morgan Wright*, of Larned, for appellants.

*Timothy P. O'Sullivan*, of Fleeson, Gooing, Coulson & Kitch, L.L.C., of Wichita, for appellees.

Before LARSON, P.J., GREEN, J., and DONALD L. WHITE, District Judge Retired, assigned.

LARSON, J.: Bert B. Lewis III and Tonya Lewis May, the residuary takers under the will of Esther Tubbs, appeal the total deple-

tion of the estate's residuary by the payment therefrom of the Generation Skipping Transfer Tax (GSTT) imposed by the Internal Revenue Code § 2601 *et seq.* (1988).

The residuary takers contend: (1) The GSTT should have been paid by and charged against the transfers generating the tax, (2) the executor's allocation of the statutory $1 million GSTT exemption exclusively to transfers other than the residuary estate was improper, (3) the trial court erred in failing to reallocate the GSTT exemption, and (4) I.R.C. § 2631 is unconstitutional.

Our analysis of this appeal will require an understanding of both the facts and the mechanism by which federal law imposes the GSTT, which was last amended as a part of the Tax Reform Act of 1986, Pub. L. No. 99-514, 100 Stat. 2717; but has seldom been the subject of reported litigation.

Esther Tubbs was a wealthy Edwards County landowner whose husband predeceased her. She left no direct descendants when she died in August 1992. She executed a will in 1981 and a codicil thereto in 1988, leaving her property in the following manner:

Article II. One section of real property in trust for her niece, Gloria Kroll and her children, Pamela Kroll Pasho, Thomas Kroll, and Patrick Kroll with annual income to Gloria Kroll until the trust terminates 20 years after Esther Tubbs' death. Any funds on hand then are to pass to Gloria Kroll, and the real property to Gloria Kroll for life, if she is then living, and the remainder in fee to her children, or the survivor or survivors of them, share and share alike.

Under Article II (i) the testatrix stated: "[i]t is my will that all estate, inheritance and other death taxes, as well as all costs of administration and debts, be paid from the residue of my estate, until my estate is closed."

Article V. Fourteen quarter sections of real property to her nephews and nieces, Douglas Burr, William Burr, Allyson Burr, and Elizabeth Williams, in equal shares, plus all of her interest in seven quarter sections of real property.

Article VI. A quarter section and all of her interest in a section of real property to Bert B. Lewis III and to his sister, Tonya Heit, who are also the residuary takers under Article XI of the will, which states:

> "After payment of all of my estate, inheritance and other death taxes, and all costs and debts of administration, I give, devise and bequeath all the rest, residue and remainder of my property, real, personal and mixed, to my Godson, Bert B. Lewis, III, and to his sister, Tony A. Heit (nee Lewis)."

Article VII. All of her interest in one quarter section to her niece Gloria Kroll.

Article IX. All of her interest in two quarter sections to Charles Albert Ray, Jeffrey James Ray, and Jamie Lynn Ray, the grandchildren of her first cousin, Myrna Huff.

Article X. Three quarter sections to Lynn Barry Feldman and Peggy Feldman Strain and their heirs.

In addition to the real property, Esther Tubbs' estate consisted of bank accounts, investments, bonds, certificates of deposits, and other personal property. The real property was appraised at $1,923,720, with her gross estate for federal estate tax purposes being valued at $4,020,830.

The federal estate tax was computed as $1,326,825, and the Kansas inheritance tax was determined to be $270,892. No question or controversy existed that these amounts were properly chargeable to or payable out of the estate's residuary.

The controversy giving rise to this appeal arose when the executor also determined that $1,628,378 of the devises and bequests were additionally taxable under the GSTT. Even after a $1 million exemption of property subject to the GSTT was applied, the additional tax, assessed at a 55% rate, amounted to $345,608. The executor charged this tax to the residuary, which depleted the residuary entirely.

At this point it would be helpful to summarize the GSTT and explain in general terms why and how it is applied.

> "Property transferred to an heir or donee and eventually transferred to such person's own heirs or donees is generally exposed twice to federal estate or gift

taxes. To avoid the second round of taxation, grantors have sometimes created life interests, with remainder interests reserved for members of subsequent generations. The generation-skipping transfer tax is designed to tax these transfers of accumulated wealth to successive generations in much the same way that a gift or estate would have done if the property had been transferred outright by gift or inheritance." Fed. Est. & Gift Tax Reporter (CCH) § 9200.

In an April 23, 1983, letter to Steven D. Symms, Chairman of the Senate Finance Committee's Subcommittee on Estate and Gift Tax, John Chapoton, Assistant Secretary of the Treasury for Tax Policy stated:

"The generation-skipping tax is intended to be a 'back up' to the estate tax, as its purpose is to impose a tax on each generation of family members regardless of the ability of tax planners to otherwise keep the decedent's property from being deemed part of the decedent's gross estate for federal estate tax purposes." (quoted from Katzenstein, *The New Generation-Skipping Tax: A Road Map*, 65 Taxes 259 [1987]).

The GSTT is based on the concept that intergenerational transfers of property should be taxed in each successive generation. Transfers across nonsuccessive generations (a generation-skipping transfer) attempt to avoid the tax imposed in each generation, and the GSTT recoups this attempted tax avoidance by imposing a tax on transfers which skip generations.

The GSTT was originally enacted in 1976, but was retroactively repealed and enacted in a substantially different form in 1986. Pub. L. No. 99-514, 100 Stat. 2717 (codified as amended at 26 U.S.C. § 2601 *et seq.* [1988]). The 1976 tax was directed towards trusts which avoided gift and estate taxes at multigenerational levels, while the 1986 version in effect today taxes direct transfers across multiple generations even where the intervening generation had or has no beneficial interest or control.

A generation is defined by levels of consanguinity for close relatives, and by 25-year intervals in other cases. I.R.C. § 2651. As the formula is applied, a distantly related or nonrelated person is within one generation of a transferor if the difference between their ages is more than 12½ years and does not exceed 37½ years. I.R.C. § 2651(d)(2).

The statutory scheme recognizes three classifications of generation-skipping transfers—direct skips, taxable terminations, and taxable distributions. I.R.C. § 2611. The classification of the skip can affect the valuation of the property for GSTT purposes (including whether the taxable amount includes the amount of the tax and the time of valuation) and determines the party responsible for the payment of taxes. See I.R.C. § 2603(a); I.R.C. §§ 2621-2624.

Direct skips are transfers to skip-persons of interest in property subject to federal estate and gift taxes. I.R.C. § 2612(c)(1). A skip-person is a person two or more generations below the transferor. I.R.C. § 2613(a)(1). A taxable termination includes the termination of a trust when an interest in trust property is transferred to a skip-person as a result. I.R.C. § 2612(a). A taxable distribution is a distribution from a trust to a skip-person. I.R.C. § 2612(b).

The full value of a direct skip at the time of transfer is taxable, I.R.C. § 2623; however, an exemption from the GSTT of $1 million is allowed under I.R.C. § 2631, which reads as follows:

"(a) General rule
For purposes of determining the inclusion ratio, every individual shall be allowed a GST exemption of $1,000,000 which may be allocated by such individual (or his executor) to any property with respect to which such individual is the transferor.
"(b) Allocations irrevocable
Any allocation under subsection (a), once made, shall be irrevocable."

If the GSTT exemption has not been allocated by the date for filing the estate tax return, the statute provides for a default allocation. I.R.C. § 2632(c). By default, the exemption is allocated first among direct skips, and then, if any remains, to trusts which might produce a taxable termination or taxable distribution. I.R.C. § 2632(c)(1).

The allocation of the exemption reduces the tax burden proportionately to the part exempted. I.R.C. § 2631(a); I.R.C. § 2642(a). The portion of a transfer which is not exempted is taxed at the maximum federal estate tax rate, currently 55%. I.R.C. § 2641; I.R.C. § 2001(c)(2)(D).

The provision which is critical to the first issue of this appeal provides that "[u]nless otherwise directed pursuant to the govern-

ing instrument by *specific reference* to the tax imposed by this chapter, the tax imposed by this chapter on a generation-skipping transfer shall be charged to the property constituting such transfer." I.R.C. § 2603(b). (Emphasis supplied.)

After the Esther Tubbs' federal estate tax return was filed, in which the $1 million exemption was allocated ratably to the remaindermen of the Article II trust and to each of the specific bequests pursuant to Article 3 on Schedule R of Form 706, the executor filed a petition to construe the will to determine whether the GSTT should be paid from the residue of the estate or whether the tax should be charged to the property constituting such transfer.

After a hearing, the trial court ruled, as a matter of law: "[T]he Executor had the right, under federal law, to allocate that exemption in the manner it was so allocated, that such allocation was proper and is now irrevocable, and the Executor was not required to provide notice of his proposed allocation to the affected transferees or to provide them with an opportunity to be heard before making that allocation."

The trial court further ruled that Articles II(1) and XI of the will, stating that "other death taxes" are to be paid from the residue and remainder of the estate, would include the GSTT.

The residuary takers then filed a motion requesting an equitable readjustment asking the trial court to increase the residuary estate equitably to achieve the effect of reapportioning the $1 million GSTT exemption among all direct skips ratably, so that the residuary estate could enjoy part of the benefit of the exemption. The trial court denied this requested relief.

The residuary takers appeal, raising four issues which we will consider as presented.

*Did the trial court err in ordering the GSTT to be paid from the residue and remainder of the estate?*

There is wording in three different places in Esther Tubbs' will and codicil which the specific devisees contend compels the GSTT to be charged in its entirety against the residuary estate. Article XI of the June 11, 1981, will states:

"After payment of all my estate, inheritance and other death taxes, and all costs and debts of administration, I give, devise and bequeath all the rest, residue and remainder of my property, real, personal and mixed, to my Godson, Bert B. Lewis, III, and to his sister, Tonya Heit (nee Lewis.)."

The critical wording here is "other death taxes," and an issue we must resolve is whether "other death taxes" includes the GSTT.

In Article II(i), at the end of the clause creating the trust, Esther Tubbs directed:

"It is my will that all estate, inheritance and other death taxes, as well as all costs of administration and debts, be paid from the residue of my estate, until my estate is closed."

Again, the words "other death taxes" are utilized.

Finally, in the 1988 codicil, Esther Tubbs directed the sale of her residence and household goods and directed, with certain specifically bequeathed exceptions, that the proceeds be used "to pay my debts and estate expense, including federal estate tax, with the balance to be a part of the residue of my estate."

This wording is claimed to require the payment of the GSTT out of the estate's residuary because of the following provision in K.S.A. 59-1405: "When a will designates the property to be appropriated for the payment of debts or other items, it shall be applied to such purpose." K.S.A. 59-1405 directs the order of application of assets to the payment of a decedent's debts unless a will or the court directs otherwise but is not controlling or applicable in determining the source of payment of federal taxes imposed on the transfer of the decedent's estate. See *Dittmer v. Schmidt*, 235 Kan. 697, 699, 683 P.2d 1252 (1984).

The facts here differ materially from *Dittmer*, where it was stated that "[t]he United States Congress has made no attempt to apportion the burden of the estate tax." 235 Kan. at 699.

In this case there is an *express federal statutory scheme* which directly relates to and controls the source of payment of the GSTT.

I.R.C. § 2603(b) mandates that "[u]nless otherwise directed pursuant to the governing instrument by specific reference to the tax imposed by this chapter, the tax imposed by this chapter on a generation-skipping transfer shall be charged to the property consti-

tuting such transfer." Stated another way, "[u]nless a will explicitly directs otherwise, the tax on a pre-residuary direct skip under a will is borne by the bequest itself." Covey *et al.*, *Planning for Generation Skipping Taxation: The New Generation Skipping Transfer Tax*, in Sophisticated Estate Planning After the Tax Reform Act of 1986, 205, 244 (ABA 1986).

Any public policy of Kansas concerning the application of federal taxes among the decedent's property is clearly preempted by the wording of I.R.C. § 2603(b) under the Supremacy Clause of the United States Constitution, Art. VI, cl. 2. An Act of Congress supersedes state law where, as argued here, there is an actual conflict between the federal and state law and compliance with both would be impossible. *Louisiana Public Service Com. v. FCC*, 476 U.S. 355, 368, 90 L. Ed. 2d 369, 106 S. Ct. 1890 (1986).

Thus, the narrow issue really becomes: Do the three statements in the will specifically refer to how the GSTT shall be charged? The validity of the executor's decision to pay the GSTT from the residuary depends on whether the Esther Tubbs' will or codicil directed by specific reference to the GSTT that source of payment. If it did not, the default provision of I.R.C. § 2603(b) would require that the tax be paid from transfers generating the tax rather than from the residuary.

The specific takers argue the three references in the will and codicil clearly show Esther Tubbs wished to have the taxes paid out of the residuary of her estate. They contend the broad language and wording "other death taxes" includes the GSTT and satisfies the "specific reference" requirement of I.R.C. § 2603(b).

What is necessary to meet the "specific reference" requirement of I.R.C. § 2603(b) involves the interpretation of a statute, which is a question of law upon which our standard of review is unlimited. See *Todd v. Kelly*, 251 Kan. 512, 515, 837 P.2d 381 (1992). On such a question we are not bound by the decision of the trial court. See *Memorial Hospital Ass'n, Inc. v. Knutson*, 239 Kan. 663, 668, 722 P.2d 1093 (1986). Although the issue involves a federal statute, it is within our power to interpret it, absent any otherwise binding court ruling. See 16 Am. Jur. 2d, Constitutional Law § 78.

Where possible in construing federal statutes, state courts should seek direction from the decisions of federal courts interpreting similar language. See *Lytle v. Southern Ry.-Carolina Division*, 171 S.C. 221, 224, 171 S.E. 42, *cert. denied* 290 U.S. 645 (1933), 90 A.L.R. 915. Courts should assume in the absence of indications to the contrary that Congress intends the words in its enactments to carry their ordinary, contemporary, and common meanings. *Pioneer Investment v. Brunswick*, 507 U.S. 380, 123 L. Ed. 2d 74, 85, 113 S. Ct. 1489 (1993). The unambiguous meaning of the words used within a statute must be regarded as conclusive in the absence of a clearly expressed legislative intent to the contrary. *Reves v. Ernst & Young*, 507 U.S. 170, 122 L. Ed. 525, 535, 113 S. Ct. 1163 (1993).

A definitional analysis of the requirement for a "specific reference" would lead us to hold the GSTT must be explicitly mentioned. Black's Law Dictionary 1398 (6th ed. 1990) defines "specific" as being "[p]recisely formulated . . . definite; explicit; of an exact or particular nature." "Reference" means the "act of referring." Webster's II New Riverside University Dictionary 1116 (1984). To "refer" means "[t]o call or direct attention to" and is synonymous with "point out," "bring up," or "mention." Roget's II, The New Thesaurus 761 (1980). Under this analysis, it is clear to us there is no specific reference satisfying the federal statute because the apportionment of the GSTT is not explicitly mentioned at *any* place in the will or codicil of Esther Tubbs.

The only references to estate, inheritance, and death taxes in the testamentary documents are general and clearly insufficient under the unambiguous words of the federal statute. See *Maas & Waldstein Co. v. United States*, 283 U.S. 582, 588-89, 75 L. Ed. 1285, 51 S. Ct. 606 (1930) (general statement that taxes were disproportionately high and requesting an assessment was not a "specific protest" required by § 1324(a)(1) of Revenue Act of 1921); *State ex rel. State Railway Commission v. Ramsey*, 151 Neb. 333, 344, 37 N.W.2d 502 (1949) ("specific" means precise or definite and is the very opposite of "general").

Commentators agree and have opined that a general direction concerning death and transfer taxes is inadequate to constitute a

"specific reference" to the GSTT tax under I.R.C. § 2603(b). See Halback, *Living with the Generation Skipping Transfer Tax*, 22 Inst. on Est. Plan. ¶ 1003.3 (1988); Covey, *Planning for Generation-Skipping Taxation: The New Generation-Skipping Transfer Tax* at 244.

There are no Kansas decisions on the issues raised by this appeal and little authority nationally, with the exception of a recent United States Tax Court case of which the appellees, in compliance with the rules of ethics, made us aware at oral argument. One of the issues in *Estate of Monroe v. Commissioner of Internal Revenue*, 104 T.C. 352 (1995), was "whether generation-skipping transfer taxes on testamentary direct skips should be charged to the property constituting the direct skips or to the residuum of decedent's estate."

*Monroe* involved a large Louisiana estate where specific legatees attempted to execute disclaimers in order to increase the marital deduction and reduce estate and generation-skipping transfer taxes. After the refusals were held not to be effective disclaimers under I.R.C. § 2518(b), the estate contended the generation-skipping transfers were to be charged to the residuum of the decedent's estate rather than the particular bequests while the IRS contended that, under decedent's will, no portion of the generation-skipping transfer tax was to be charged to the residuum of decedent's estate.

In *Monroe*, the decedent's will directed that " 'all federal estate taxes, state and City inheritance or estate transfer taxes or other death taxes' attributable to the foregoing bequests be paid from the residuum of decedent's estate." 104 T.C. at 353. The contentions made in *Monroe* were similar to the arguments made herein, and the tax court stated:

"Section 2603(b) requires that there be a 'specific reference' to the generation-skipping transfer tax to prevent a charge to the property constituting the transfer. The words of the provision are unambiguous and should be accorded their ordinary and everyday meaning. *Malat v. Riddell*, 383 U.S. 569, 572 (1966). Decedent's reference to 'death taxes' is not equivalent to a 'specific reference' to the generation-skipping transfer tax. Section 2603(b) requires a will or other governing instrument to make specific reference to the tax 'imposed by this chapter', namely, Chapter 13, captioned Tax on Certain Generation-Skipping Transfers, whereas the provisions of the Federal estate tax are in a different chapter of the Code, *i.e.*,

chapter 11. There is no evidence of legislative purpose overriding the plain meaning of 'specific reference', and, thus, we hold that an explicit reference to generation-skipping transfer taxes is required by section 2603(b). See *Leckie Scholarship Fund v. Commissioner,* 87 T.C. 251, 260 (1986).

"Respondent also argues that Louisiana law, not Federal law, governs the net interest in property passing to Monroe for purposes of the marital deduction and cites *Riggs v. Del Drago,* 317 U.S. 95 (1942), as authority. In that case, the Supreme Court held: 'Congress intended that the federal estate tax should be paid out of the estate as a whole, and that the applicable state law as to the devolution of property at death should govern the distribution of the remainder and the ultimate impact of the federal tax.' Id. at 97-98; emphasis added. Respondent cites additional cases where State law governed the allocation of estate administrative expenses and Federal estate taxes. *Estate of Penny v. Commissioner,* 504 F.2d 37 (6th Cir. 1974), *revg. and remanding* 59 T.C. 102 (1972); *Estate of Allen v. Commissioner,* 101 T.C. 351 (1993); *Bulliard v Bulliard,* 363 So. 2d 1343 (La. Ct. App. 1978). These cases are distinguishable, because, unlike the case at hand, there was no Federal statute directing how Federal estate taxes or administration expenses were to be apportioned.

"Section 2603(b) governs the apportionment of generation-skipping transfer taxes in this case and requires that such taxes be imposed on the transferred property. The governing instrument does not provide otherwise with a specific reference to the generation-skipping transfer tax. Because the provision in decedent's will did not specifically refer to generation-skipping transfer taxes, taxes on the three in-trust legacies do not reduce the marital deduction." 104 T.C. at 364-65.

The *Monroe* case *is* factually different, as the specific takers argue, but its holding is consistent with the decision we reach herein. The trial court improperly approved the executor's decision that the entire GSTT liability of the estate be paid from and charged completely to the residuary of the Tubbs' estate. The specific wording of I.R.C. § 2603(b) requires the GSTT to be charged to the generation-skipping transfers on which the tax is imposed.

In reaching this conclusion, we have not relied on or considered I.R.S. Technical Advice Memorandum 9246009 and its impact on I.R.C. § 2603(b). In the first case, I.R.C. § 6110(j)(3) states that such a memorandum cannot be used or cited as precedent, and, further, the precise issue before us was never reached therein.

*Did the trial court err in approving the executor's allocation of the estate's $1 million GSTT exemption among all direct skips subject to the tax except the residuary?*

The provisions of I.R.C. § 2631 relating to the $1 million GSTT exemption have been previously set forth in full in this opinion. When the estate tax return was filed, the executor allocated the exemption among the direct skips other than the residuary takers. The residuary takers argue that if this is permitted the executor achieves indirectly what he cannot do directly—imposing the GSTT only on the residuary despite the lack of specific reference to the GSTT in the will directing such a result. We do *not* agree.

The wording of I.R.C. § 2603(b), which we have discussed in the first issue, relates to the allocation of the tax, not the allocation of the exemption. The exemption may be used to reduce the amount of the resulting tax, but to equate one to the other in the manner the residuary takers argue is disingenuous.

The Internal Revenue Code does not cross-reference § 2603(b) to § 2631, which specifically states that the allocation of the exemption made by the executor will be recognized by the IRS. The ruling we have previously made concerning the lack of specificity in the tax clauses has no effect on the manner in which we consider the executor's allocation of the $1 million exemption.

Executors are required to act in a fiduciary capacity and owe their duty to the estate rather than to any particular legatee or devisee. *Stump v. Flint*, 195 Kan. 2, 9, 402 P.2d 794 (1965); see *Quinlan v. Leach*, 5 Kan. App. 2d 706, 708, 623 P.2d 1365 (1981). An executor is required to conform to the directions given in the will. *Diner v Hendrix*, 178 Kan. 253, 257, 284 P.2d 1080 (1955). It has further been held that the powers granted to an executor should be liberally construed and never captiously drawn into question in such a way as to handicap the efficient discharge of his or her trust. See *Bank v. Grisham*, 105 Kan. 460, 471, 185 Pac. 54 (1919).

The executor here plainly and simply had the power to allocate the GSTT exemption of the estate. The will provided: "I hereby authorize my said Executor to do any and all things necessary to carry out the provisions of this will and deemed by him to be in the best interest of my estate." This wording taken alone would be sufficient to justify the executor's actions; but, when we consider that the will also said "It is my will that all estate, inheritance and

other death taxes, as well as all costs of administration and debts, be paid from the residue of my estate," it is clear the executor had the necessary power to allocate the exemption which the residuary takers dispute.

Because of federal law, the absence of specific reference to the GSTT prevents the payment of all of this tax from the residuary as we have previously held, but it does not prevent the executor from fulfilling the testatrix's directions to the fullest extent possible through the allocation of the GSTT exemption.

We will not look beyond the wording of the will or consider any of the extrinsic evidence which the residuary takers proffered to the court. See *In re Estate of Pickrell*, 14 Kan. App. 2d 375, Syl. ¶ 3, 791 P.2d 41 (1990), *aff'd* 248 Kan. 247, 806 P.2d 1007 (1991) (where will is unambiguous, extrinsic evidence of intent is inadmissible). The will is not ambiguous and clearly requires us to utilize the cardinal rule of construction that we should ascertain intent from consideration of all the provisions of the will. See *Drach v. Ely* , 237 Kan. 654, 656, 703 P.2d 746 (1985).

The executor exercised his discretion within the grant of authority given by the will. Further, to the extent allowed, the residue is charged with the taxes as the will clearly provides.

It is not proper for us to consider what Esther Tubbs' attorney did or did not talk to her about. Nor will we comment on or consider the effect of an IRS audit, as that issue is not properly before us.

In summary, the trial court's order approving the executor's allocation of the $1 million GSTT exemption is affirmed.

*Did the trial court err in failing to equally reallocate the GSTT exemption?*

This issue, is in effect, decided by our ruling in the preceding issue. We understand that from the residuary takers' perspective, allocation of the exemption to all direct skips except theirs seems unfair. But, this is consistent with the directions of the testamentary documents and in light of the intent of the testatrix, cannot be considered inequitable so as to require or allow a reallocation.

*Is I.R.C. § 2631 unconstitutional?*

Finally, we will not reach the residuary takers' argument that the grant of powers to the executor to allocate the exemption given by I.RC § 2631 is unconstitutional, because this issue was not presented to th.e trial court. See *State v. Shepherd*, 213 Kan. 498, Syl. ¶ 5, 516 P.2d 945 (1973). Had it been, it would be found to be without merit.

Affirmed in part, reversed in part, and remanded with directions that the GSTT is to be charged against and paid by the transfers which generate the tax.