Jessie (Jesus) MONTEZ, David Bryan, George Karl, Eugene Gilpin, John Armintrout, Kenneth Garcia, Duncan Leach, Robert Sikitch, Patricia Ballard, Diedra Givens, Gail Levine, and Jim Bulgier, as representatives of themselves and all others similarly situated in this class action, Plaintiffs,

v.

Roy ROMER, Governor of Colorado, The Colorado Department of Corrections, Ari Zavaras, Executive Director of the Colorado Department of Corrections, Frank Gunter, Former Director of the Colorado Department of Corrections, Bill Price, Warden of the Arkansas Valley Correctional Center, R. Mark McDuff, Warden of the Arrowhead Correctional Center, the Four Mile Correctional Facility, the Skyline Correctional Center, and the Pre–Release Correctional Center, Gary Neet, Warden of the Buena Vista Correctional Facility, Warren Diesslin, Former Warden of the Buena Vista Correctional Facility, Frank Miller, Warden of the Centennial Correctional Facility, Donice Neal, Warden of the Colorado State Penitentiary, Mark Williams, Warden of the Colorado Women's Facility, Mark McKinna, Warden of the Colorado Territorial Correctional Facility, Ben Johnson, Former Warden of the Colorado Territorial Correctional Facility, Dr. J. Frank Rice, Warden of the Denver Reception and Diagnostic Center, Larry Embry, Warden of the Fremont Correctional Facility, Tom Cooper, Former Warden of the Fremont Correctional Facility, Bob Furlong, Warden of the Limon Correctional Facility, Bill Boggs, Warden of the Rifle Correctional Facility, Bill Bokros, Warden of the Pueblo Minimum Center, David Holt, Medical Administrator of the Arrowhead Correctional Facility, the Centennial Correctional Facility, the Colorado State Penitentiary, the Fremont Correctional Facility, and the Skyline Correctional Facility, Jean Moltz, Medical Administrator at the Buena Vista Correctional Facility, and the Rifle Correctional Facility, Ron Johnson, Medical Administrator at the Denver Reception and Diagnostic Center, Cheryl Smith, Medical Administrator at the Colorado Territorial Correctional Facility and the Colorado Women's Correctional Facility, Don Lawson, Clinical Administration Director at the Limon Correctional Facility and the Arkansas Valley Correctional Facility, and Bob Moore, who supervises the medical department at the Pueblo Minimum Center, and John Doe(s), current and former Wardens of any correctional facility maintained, operated, or controlled by the Colorado

Department of Corrections, and John Roe(s), current and former Medical Administrators of any correctional facility maintained, operated, or controlled by the Colorado Department of Corrections, Defendants.

Nos. Civ.A. 92 N 870, Civ.A. 96 N 343.

United States District Court,
D. Colorado.

Jan. 21, 1999.

David Miller, Paula Greisen, Miller, Lane, Killmer & Greisen, LLP, Denver, CO, for Plaintiffs.

William Higgins, Diane Michaud, Attorney General's Office, Denver, CO, for Defendants.

## MEMORANDUM OPINION AND ORDER

NOTTINGHAM, District Judge.

In this case, which I have heretofore certified as a class action, state prisoners with various disabilities are claiming primarily that state officials have violated certain federal statutes prohibiting discrimination based on one's disabilities. The named plaintiffs are inmates at various correctional facilities operated by the Defendant Colorado Department of Corrections [hereinafter "the Corrections Department"]. Plaintiffs allege that the Corrections Department and the individual defendants in their individual and official capacities have violated (1) the Rehabilitation Act, 29 U.S.C.A. § 794 (West 1985 & Supp. 1997) [hereinafter "Rehabilitation Act"], (2) the Americans with Disabilities Act, 42 U.S.C.A. §§ 12101 to 12213 (West 1995 & Supp.1997) [hereinafter "Disability Act"], and (3) 42 U.S.C.A. § 1983 (West 1994 & Supp. 1997), together with the Eighth and Fourteenth Amendments to the United States Constitution. Plaintiffs seek declaratory, injunctive, and compensatory relief. They also ask for attorney fees. This matter is before the court on "State Defendants' Partial Motion to Dismiss" filed September 13, 1996. Jurisdiction is based on 28 U.S.C.A. § 1331 (West 1993).

## FACTS

Plaintiffs allege the following in their second amended complaint. (Second Am. Compl.—Class Action [filed Jan. 25, 1996] [hereinafter "Second Am.Compl."].) Plaintiffs have a variety of disabilities, including mobility impairments, diabetes, hearing impairments, and vision impairments. According to plaintiffs, the defendants have discriminated against them on the basis of their disabilities. In particular, plaintiffs allege that (1) defendants have failed to accommodate the variety of disabilities presented by plaintiffs, (2) the Corrections Department facilities have impermissible architectural barriers which create "imminent risks of serous injury," and (3) because of defendants' refusal to accommodate inmates with disabilities, plaintiffs are unable to use law libraries, visiting areas, yard areas, laundry facilities, dining halls, vocational training, recreational facilities, bathing and restroom facilities, and medical clinics. Further, plaintiffs claim that defendants deny plaintiffs prison employment solely on the basis of their disabilities. According to plaintiffs, defendants exclude them from necessary medical and rehabilitation services and otherwise deny inmates with disabilities "programs, services, and benefits provided by [the Corrections Department] and the individual correctional facilities."

On May 5, 1992, Plaintiff Montez filed a *pro se* complaint alleging a civil rights claim. (Compl. [filed May 5, 1992].) The case was assigned to Judge Carrigan. On August 13, 1993, Plaintiff Montez, who then was repre-

sented by counsel, filed an amended complaint in which he asserted claims under section 1983, the Rehabilitation Act, and the Disability Act. (Am.Compl. [filed Aug. 13, 1993].) Plaintiff Montez also asserted state-law tort claims for negligent infliction of emotional distress and extreme, outrageous conduct. He further sought attorney fees and costs. (*Id.*)

On July 18, 1994, Plaintiff Montez again sought to amend his complaint. (Mot. to Amend Compl. [filed July 18, 1994].) On July 22, 1994, Magistrate Judge Borchers granted Plaintiff Montez's motion to amend his complaint and deemed the modified complaint filed. (Order [filed July 22, 1994].) Plaintiff Montez's amended complaint (which he styled as a first amended complaint although it was actually the second amended complaint) included class-action allegations; it also sought relief under section 1983, the Rehabilitation Act, and the Disability Act; and it abandoned his state-law claims.

On September 25, 1995, and January 25, 1996, Plaintiff Montez moved to add additional named plaintiffs—Plaintiffs Bryan, Karl, Gilpin, Armintrout, and Garcia. (Mot. to Add Additional Named Pls. [filed Sept. 25, 1995]; Mot. for Three Day Extension of Time to File Second Am. Compl. and to Add One Additional Pl. [filed Jan. 25, 1996].) On October 16, 1995, following Judge Carrigan's retirement, this case was transferred to me. On January 15 and 29, 1996, I granted, *inter alia,* Plaintiff Montez's motions to add additional named plaintiffs and the motion for class certification. (Order [filed Jan. 15, 1996]; Minute Order [filed Jan. 29, 1996].) On January 25, 1996, plaintiffs filed an amended complaint (which they styled, and to which the court will refer, as the second amended complaint, although it was actually the third amended complaint). (Second Am. Compl.) On May 31, 1996, plaintiffs moved to add additional named plaintiffs—Plaintiffs Leach, Sikitch, Levine, Givens, and Ballard. (Mot. to Add Named Pls., Provide Notice to Class Members, and for Immediate Hr'g [filed May 31, 1996].) On June 13, 1996, I granted plaintiffs motion to add additional named plaintiffs. (Courtroom Mins. [filed June 13, 1996].)

On September 13, 1996, defendants moved to dismiss part of plaintiffs' second amended complaint. (State Defs.' Partial Mot. to Dismiss [filed Sept. 13, 1996].) According to defendants, the Rehabilitation Act and the Disability Act do not apply to prisons. (Br. in Supp. of State Defs.' Partial Mot. to Dismiss at 3–12 [filed Sept. 13, 1996] [hereinafter "Defs.' Br."].) Additionally, defendants argue that individuals may not be held liable under the Rehabilitation Act and the Disability Act. (*Id.* at 13.) Defendants further contend that to apply the Rehabilitation Act and the Disability Act to state prisons violates the Tenth Amendment by impermissibly interfering with core state functions. (*Id.* at 14–16.) With regard to plaintiffs' section 1983 claims, defendants assert that the Eleventh Amendment protects from liability the individual defendants sued in their official capacities. (*Id.* at 16–17.) Further, defendants contend that the individual defendants sued in their individual capacities are entitled to qualified immunity because it was not clearly established at the time of the challenged conduct that either the Rehabilitation Act or the Disability Act applied to state prisons. (*Id.* at 17–18.)

## ANALYSIS

### 1. Legal Standard

For the purposes of a motion to dismiss under rule 12(b)(6), the pleading is construed in the light most favorable to the non-moving party, and its allegations are taken as true. *See, e.g., Daigle v. Shell Oil Co.,* 972 F.2d 1527, 1533 (10th Cir.1992). The court considers whether the allegations set forth in the pleading constitute a statement of a claim under rule 8(a) of the Federal Rules of Civil Procedure. *See* 5A Charles A. Wright & Arthur R. Miller, *Federal Practice and Procedure* § 1363, at 460 (2d ed.1990). Rule 8(a) provides that the pleading need only set out a generalized statement of facts from which the opposing party will be able to frame a responsive pleading. Fed.R.Civ.P. 8(a). Thus, in appraising the sufficiency of the allegations, "the [pleading] should not be dismissed for failure to state a claim unless it appears beyond doubt that [plaintiff] can prove no set of facts in support of his claim that would entitle him to relief." *Conley v. Gibson,* 355 U.S. 41, 45–46, 78 S.Ct. 99, 102, 2

L.Ed.2d 80 (1957); *see Daigle*, 972 F.2d at 1533. Additionally, the court must determine if plaintiff's allegations provide any basis for relief on any possible theory, as the court should not dismiss a complaint merely because plaintiff's allegations do not support the particular legal theory on which the plaintiff intends to proceed. *See* 5A Charles A. Wright & Arthur R. Miller, § 1357, at 336–37.

### 2. Applicability of the Disability Act and the Rehabilitation Act to State Prisons

The substantive provision of the Rehabilitation Act provides, in pertinent part: "[n]o otherwise qualified individual with a disability ... shall, solely by reason of her or his disability, be excluded from the participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance...." 29 U.S.C.A. § 794(a). The Rehabilitation Act defines "program or activity" to include "all of the operations of—[ ] a department, agency, special purpose district, or other instrumentality of a State or of a local government ... any part of which is extended Federal financial assistance." 29 U.S.C.A. § 794. The Rehabilitation Act served as the model for the Disability Act. *See Crawford v. Indiana Dep't of Corrections*, 115 F.3d 481, 483 (7th Cir.1997).

Broader than the Rehabilitation Act, the Disability Act extends similar protections and prohibitions against discrimination to all state and local government services, programs, and activities, regardless of whether they receive federal financial assistance. *Id.* The Disability Act provides in pertinent part: "no qualified individual with a disability, shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by any such entity." 42 U.S.C.A. § 12132. The Disability Act defines public entity to include "any State or local government; [and] any department, agency, special purpose district, or other instrumentality of a State or States or local government." 42 U.S.C.A. § 12131. As a general matter, courts have construed the Rehabilitation Act and the Disability Act similarly. *Patton v. TIC United Corp.*, 77

F.3d 1235, 1245 (10th Cir.), *cert. denied*, 518 U.S. 1005, 116 S.Ct. 2525, 135 L.Ed.2d 1049 (1996). Further, Congress has indicated that the Disability Act should be interpreted in a manner consistent with the Rehabilitation Act. *See* 42 U.S.C.A. §§ 12134, 12201. In particular, cases considering the applicability of the statutes to prisons have treated the two together. *See Yeskey v. Com. of Pennsylvania Dep't of Corrections*, 118 F.3d 168, 170 (3d Cir.1997), *aff'd*, —— U.S. ——, 118 S.Ct. 1952, 141 L.Ed.2d 215 (1998); *Crawford*, 115 F.3d at 483. Accordingly, I treat plaintiffs' claims under the Rehabilitation Act and the Disability Act together.

■ The language of the Rehabilitation Act and the Disability Act contains no limitation which would exclude application of either statute to prisons. The Disability Act is broadly worded to include "*any* State or local government [and] *any* department, agency, ... or other instrumentality of a State or States or local government." 42 U.S.C.A. § 12131 (emphasis supplied). The Rehabilitation Act applies to "*any* program or activity receiving Federal financial assistance" and offers a similarly broad definition of program or activity. 29 U.S.C.A. § 794 (emphasis supplied). The United States Supreme Court's decision in *Pennsylvania Department of Corrections v. Yeskey*, —— U.S. ——, 118 S.Ct. 1952, 141 L.Ed.2d 215 (1998) is undeniably dispositive of the issues with respect to the Disability Act. Given the parallel interpretations which courts afford the Rehabilitation Act, I also conclude that *Yeskey* is dispositive of the issues under the Rehabilitation Act.

The defendants also argue that Tenth Circuit precedent, which has held the Rehabilitation Act and the Disability Act inapplicable to prisoner *employment,* precludes application of the statutes to other aspects of prison life. In *White v. Colorado,* 82 F.3d 364, 367 (10th Cir.1996), the Tenth Circuit relied on *Williams v. Meese,* 926 F.2d 994, 997 (10th Cir.1991), and concluded that the Rehabilitation Act and the Disability Act do not apply to prison employment situations. In *Williams,* the court reasoned that the federal prisoner plaintiff was not an "employee" under title VII of the Civil Rights Act of 1964

or the Age Discrimination in Employment Act and thus could not make a Rehabilitation Act claim either. *Williams,* 926 F.2d at 997. Further, the court stated that "programs or activities" as defined by the Rehabilitation Act did not include the federal prisons. *Id. White* extended the holding of *Williams* to the state prison employment context. *White,* 82 F.3d at 367. Both cases clearly limited their holdings to the prison employment context. My reading of the statutes suggests no limitation of the definition of programs or activities which would exclude prison employment, and I think that the Tenth Circuit's holdings in *White* and *Williams* are not consistent with the Supreme Court's holding in *Yeskey.* Accordingly, I decline the invitation to dismiss plaintiffs' challenge to conditions of prison employment.

### 3. The Rehabilitation Act and the Disability Act Applied to Individual Capacity Defendants

■ Having concluded that the plaintiffs have stated legally cognizable claims for relief under the Rehabilitation Act and the Disability Act, I must consider the defendants' argument that neither the Rehabilitation Act nor the Disability Act covers individual defendants in their individual capacities. (Defs.' Br. at 13.) In *U.S. EEOC v. AIC Security Investigations, Ltd.,* 55 F.3d 1276, 1279–82 (7th Cir.1995), relied upon by defendants to support their argument, the court held that individuals "who do not independently meet the [Disability Act's] definition of 'employer' cannot be held liable under the [Disability Act]." *Id.* at 1279. The claims in *AIC Security Investigations, Ltd.* were, however, brought under a different section (title I) of the Disability Act than the claims in this case. Title I of the Disability Act addresses employment discrimination. 42 U.S.C.A. §§ 12111 to 12117. Title II of the Disability Act, the portion of the statute under which plaintiffs in this case have brought their claims, prohibits discrimination on the basis of disability in the provision of programs, activities, and services of public entities. 42 U.S.C.A. §§ 12131 to 12134.[1] Title III of the Disability Act governs access for individuals with disabilities in public accommodations.

42 U.S.C.A. §§ 12181 to 12189. Thus, although I consider the *AIC Security Investigations, Ltd.* holding in reaching my conclusion that the individual defendants are not liable under the Rehabilitation Act or title II of the Disability Act, I must consider the specific statutory enforcement frameworks of the Rehabilitation Act and title II of the Disability Act as well.

Section 12132 of the Disability Act is to be enforced with the "remedies, procedures, and rights" established under the Rehabilitation Act, 29 U.S.C.A. § 794a. *See* 42 U.S.C.A. § 12133. Section 794a invokes the remedies, procedures, and rights of portions of titles VI and VII of the Civil Rights Act of 1964, 42 U.S.C.A. §§ 2000d to 2000d–7, 2000e–5(f) to (k), and 2000e–16 (West 1994 & Supp.1997). Nothing in the language of the Rehabilitation Act and the Disability Act sections above explicitly authorizes or prohibits suits against individuals acting in their individual capacities. The sections of the Civil Rights Act of 1964 which the Rehabilitation Act and the Disability Act invoke provide some guidance. Only 42 U.S.C.A. § 2000e–16(c) explicitly addresses the issue, providing in employment actions against the federal government, that the "head of the department, agency, or unit, as appropriate shall be the defendant." 42 U.S.C.A. § 2000e–16(c); *see Newbold v. U.S. Postal Service,* 614 F.2d 46, 47 (5th Cir.1980). This statutory directive suggests that plaintiffs cannot assert claims against individuals in their individual capacities.

In addition to the statutory framework which suggests that individuals may not be held liable under title II of the Disability Act, personal liability has been rejected under both titles I and III of the Act. In the employment discrimination context (title I of the Disability Act), individuals are not subject to personal liability. *AIC Security Investigations, Ltd.,* 55 F.3d at 1279 (rejecting individual liability under the Disability Act); *cf. Haynes v. Williams,* 88 F.3d 898, 901 (10th Cir.1996) (holding that "personal capacity suits against individual supervisors are inappropriate under Title VII"). The *AIC Security Investigations, Ltd.* court reached

---

1. Title II has two additional subparts, not relevant to this case, which address different forms of public transportation. 42 U.S.C.A. §§ 12141 to 12150 and 42 U.S.C.A. §§ 12161 to 12165.

its conclusion, in part, based on its interpretation of the Disability Act's statutory definition of employer, which limits liability to entities of a certain minimal size. Similarly, individuals who do not meet the statutory definition of operators of places of public accommodation are not subject to liability under title III of the Disability Act. *Guckenberger v. Boston Univ.*, 957 F.Supp. 306, 321–22 (D.Mass.1997). These cases suggest that individual liability is not contemplated under title II of the Disability Act. I am not persuaded otherwise by plaintiffs' citation to *Niece v. Fitzner*, 922 F.Supp. 1208, 1218–19 (E.D.Mich.1996). *Niece* concluded that suits against public officials acting in their individual capacities were proper. It did not, however, consider either the enforcement scheme for title II of the Disability Act or decisions rejecting liability under other sections of the Disability Act. With minimal analysis, the *Niece* court concluded that because the Disability Act is a "broad remedial statute enacted to eliminate discrimination against disabled persons ... it must be construed broadly to carry out its purpose." *Id.* at 1218–19. Based on the statutory framework discussed above and the cases rejecting individual liability under other sections of the Disability Act, I decline to follow *Niece*.

Plaintiffs' reliance on *Seminole Tribe of Florida v. Florida*, 517 U.S. 44, 116 S.Ct. 1114, 1131 n. 14, 134 L.Ed.2d 252 (1996) and *Ex Parte Young*, 209 U.S. 123, 28 S.Ct. 441, 52 L.Ed. 714 (1908) is misplaced because these cases are inapposite to the issue of individual capacity liability. Both cases considered the relationship of the Eleventh Amendment to a plaintiff's ability to bring suit against states and state officers in their official, not individual, capacities. Similarly, plaintiffs' citation to *Anderson v. Creighton*, 483 U.S. 635, 638, 107 S.Ct. 3034, 3038, 97 L.Ed.2d 523 (1987), which discussed qualified immunity and the availability of damages against Government officials in the context of a claim for constitutional violations, does not address the issue of individual capacity liability under the Rehabilitation Act and the Disability Act.

For the foregoing reasons, I conclude that the individual defendants in their individual capacities are not properly subject to suit under the Rehabilitation Act or the Disability Act. Accordingly, plaintiffs' Rehabilitation Act and Disability Act claims against the individual defendants in their individual capacities will be dismissed.

### 4. Section 1983 Claims Against Individual Defendants in their Official Capacities

■ Defendants argue that the Eleventh Amendment precludes plaintiffs' section 1983 claims for damages against the individual defendants in their official capacities. The Eleventh Amendment provides that "[t]he Judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another State, or by Citizens or Subjects of any Foreign State." U.S. Const. amend. XI. Although the text of the amendment does not explicitly bar suits against a state by its own citizens, the Supreme Court has repeatedly held that the bar operates as to those suits as well. *See Edelman v. Jordan*, 415 U.S. 651, 662–63, 94 S.Ct. 1347, 1355, 39 L.Ed.2d 662 (1974) (citing *Hans v. Louisiana*, 134 U.S. 1, 10 S.Ct. 504, 33 L.Ed. 842 [1890] ). Thus, unless a state consents to be sued, the Eleventh Amendment proscribes suits in federal court against a state. *Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 100, 104 S.Ct. 900, 908, 79 L.Ed.2d 67 (1984); *Edelman*, 415 U.S. at 663, 94 S.Ct. at 1355–56. Because claims against state officials in their official capacities are essentially actions against a state itself, the Eleventh Amendment bars those suits as well. *Will v. Michigan Dep't of State Police*, 491 U.S. 58, 71, 109 S.Ct. 2304, 2312, 105 L.Ed.2d 45 (1989); *Kentucky v. Graham*, 473 U.S. 159, 169, 105 S.Ct. 3099, 3107, 87 L.Ed.2d 114 (1985). Whether the Eleventh Amendment precludes the court from exercising jurisdiction over an action depends, in part, on the type of relief sought. Primarily, the Eleventh Amendment bars federal-court actions for damages. *Kentucky*, 473 U.S. at 169, 105 S.Ct. at 3107. The Eleventh Amendment does not generally bar actions for prospective injunctive relief where state officials have violated federal law. *Quern v. Jordan*, 440 U.S. 332, 349, 99 S.Ct. 1139, 1149, 59 L.Ed.2d 358 (1979); *Edelman*, 415 U.S. at 665–68, 94 S.Ct. at

1356–58; *Johns v. Stewart,* 57 F.3d 1544, 1555 (10th Cir.1995). Where equitable relief has a monetary impact on the state treasury, however, the Eleventh Amendment may bar the relief. *Edelman,* 415 U.S. at 665–68, 94 S.Ct. at 1356–58 (recognizing that "the difference between the type of relief barred by the Eleventh Amendment and that permitted ... will not in many instances be that between day and night.").

■ Plaintiffs' claims against the individual defendants in their official capacities are essentially claims against the state. Accordingly, they are subject to the restrictions of the Eleventh Amendment. Plaintiffs seek declaratory, injunctive, and compensatory relief, as well as costs and attorney fees. (Second Am.Compl. ¶¶ A–K.) Insofar as plaintiffs seek compensatory monetary damages and prospective injunctive relief which would have an impact on the state treasury, that relief is precluded by the Eleventh Amendment.[2] At this stage of the case, it is not possible to state with precision what other relief, if any, may be awarded, and whether such relief comports with the Eleventh Amendment.

### 5. *Qualified Immunity*

■ The doctrine of qualified immunity shields government officials performing discretionary functions from individual liability under section 1983 where their actions do not violate clearly established statutory or constitutional rights of which a reasonable person would have known. *Harlow v. Fitzgerald,* 457 U.S. 800, 818, 102 S.Ct. 2727, 2738, 73 L.Ed.2d 396 (1982); *Derda v. Brighton, Colo.,* 53 F.3d 1162, 1163–64 (10th Cir. 1995). Whether a defendant is entitled to qualified immunity is a question of law. *Derda,* 53 F.3d at 1164. Once a defendant claims qualified immunity, the plaintiff bears the heavy burden of demonstrating that: (1) defendant's alleged actions violated a constitutional or statutory right; and (2) the constitutional or statutory right was clearly established at the time of the alleged violation. *See Trigalet v. Young,* 54 F.3d 645, 647 (10th

Cir.) (quoting *Albright v. Rodriguez,* 51 F.3d 1531, 1533 [10th Cir.1995] ), *cert. denied sub nom. Trigalet v. Warrick,* 516 U.S. 932, 116 S.Ct. 340, 133 L.Ed.2d 238 (1995); *Derda,* 53 F.3d at 1164. The plaintiff must articulate "with specificity" the clearly established constitutional or statutory right at issue. *Romero v. Board of County Comm'rs,* 60 F.3d 702, 704 (10th Cir.1995) (quoting *Albright,* 51 F.3d at 1534), *cert. denied,* 516 U.S. 1073, 116 S.Ct. 776, 133 L.Ed.2d 728 (1996). "It is insufficient simply to 'identify in the abstract a clearly established right and allege that the defendant has violated it.' " *Derda,* 53 F.3d at 1164 (quoting *Romero v. Fay,* 45 F.3d 1472, 1475 [10th Cir. 1995] ). For a right to have been "clearly established," "[t]he contours of the right must be sufficiently clear that a reasonable official would understand that what he is doing violates that right." *Creighton,* 483 U.S. at 640, 107 S.Ct. at 3039; *Beard v. City of Northglenn,* 24 F.3d 110, 114 (10th Cir. 1994). This does not mean, however, "that an official action is protected by qualified immunity unless the very action in question has previously been held unlawful." *Creighton,* 483 U.S. at 640, 107 S.Ct. at 3039. Rather, "in light of pre-existing law the unlawfulness must be apparent." *Id.* The Tenth Circuit has held that "[o]rdinarily, in order for the law to be clearly established, there must be a Supreme Court or Tenth Circuit decision on point, or the clearly established weight of authority from other courts must have found the law to be as the plaintiff maintains." *Medina v. City & County of Denver,* 960 F.2d 1493, 1498 (10th Cir.1992).

Defendants contend that, insofar as plaintiffs' section 1983 claim is based on the Rehabilitation Act or the Disability Act, they are entitled to qualified immunity. Plaintiffs argue that defendants are not entitled to qualified immunity because (1) defendants had actual knowledge that the Rehabilitation Act and the Disability Act applied to prisons, as evidenced by their attempts to comply with

---

2. Although the Eleventh Amendment bars certain types of relief against the individual defendants sued in their official capacities, the Disability Act expressly waives the states' Eleventh Amendment immunity. *See* 42 U.S.C.A. § 12202. Thus, re-

gardless of the immunity afforded the individual defendants in their official capacities, the state of Colorado has no Eleventh Amendment immunity in this action.

the statutory requirements, and thus should be estopped from seeking qualified immunity, and (2) the law was clearly established that the Rehabilitation Act and the Disability Act applied to prisons. (Pls.' Resp. to State Defs.' Partial Mot. to Dismiss at 28–30 [filed Oct. 8, 1996] [hereinafter "Pls.' Resp."].)

The qualified immunity inquiry is an objective one. *Creighton,* 483 U.S. at 645, 107 S.Ct. at 3042 (noting that *Harlow,* 457 U.S. at 815–20, 102 S.Ct. at 2736–39, shifted the qualified immunity inquiry from subjective malice to an "objective inquiry into the legal reasonableness of the official action"); *Laidley v. McClain,* 914 F.2d 1386, 1394 (10th Cir.1990) ("The key to the inquiry is the objective reasonableness of the official's conduct in light of the legal rules that were clearly established at the time the action was taken."); *see also Torcasio v. Murray,* 57 F.3d 1340, 1351 n. 9 (4th Cir.1995) (finding defendants were entitled to qualified immunity on plaintiff's claims under the Rehabilitation Act and the Disability Act and stating that "the 'clearly established' inquiry is an objective inquiry"), *cert. denied sub nom., Torcasio v. Angelone,* 516 U.S. 1071, 116 S.Ct. 772, 133 L.Ed.2d 724 (1996). Only when subjective components are an essential element in a plaintiff's claim may the inquiry extend beyond objective standards. *Hannula v. City of Lakewood,* 907 F.2d 129, 132 n. 4 (10th Cir.1990). Plaintiffs have not argued, nor is it apparent to the court, that any elements of their claims under the Rehabilitation Act and the Disability Act have subjective components. Thus, my inquiry on defendants' assertion of qualified immunity is limited to an objective inquiry. I conclude that plaintiffs' estoppel argument is without merit.

 At the time defendants committed the allegedly discriminatory conduct of which the plaintiffs complain, it was not clearly established that the Rehabilitation Act and the Disability Act applied to prisons. In order for the law to be clearly established, there must be a Supreme Court or Tenth Circuit ruling on point, or the clearly established weight of authority of other circuits must indicate that the state of the law is certain. Although some circuits had determined that the Rehabilitation Act applied to prisons, *see Lue,* 43 F.3d at 1204; *Harris,* 941 F.2d at

1522 n. 41; *Bonner,* 857 F.2d at 562, the Tenth Circuit had determined that, at least in the employment context, the Rehabilitation Act did not apply to prisons, *see Williams,* 926 F.2d at 997. The Tenth Circuit later extended that holding to include the Disability Act. *White,* 82 F.3d at 367. Thus, the indication in this circuit was that the Rehabilitation Act and the Disability Act did not apply in the prison context. Although I have concluded that the Rehabilitation Act and the Disability Act do apply, that does not constitute "clearly established law" at the time of the defendants conduct. Thus, I conclude that the individual defendants in their individual capacities are entitled to qualified immunity insofar as plaintiffs' section 1983 claims rest on the Rehabilitation Act and the Disability Act.

### 6. Conclusion

Based on the foregoing, it is therefore

ORDERED as follows:

1. Defendants' motion to dismiss is GRANTED in part and DENIED in part, as follows.

2. Defendants' motion is GRANTED with respect to plaintiffs' Rehabilitation Act and Disability Act claims against the individual defendants in their individual capacities. Those claims are hereby dismissed.

3. Defendants' motion is GRANTED with respect to plaintiffs' section 1983 claims against the individual defendants in their official capacities, insofar as plaintiffs seek compensatory monetary damages and prospective injunctive relief which would have an impact on the state treasury. Such claims are hereby dismissed.

4. The individual defendants in their individual capacities are entitled to qualified immunity with respect to plaintiffs' section 1983 claims insofar as they are based on the Rehabilitation Act and the Disability Act. All section 1983 claims against the individual defendants in their individual capacities under the Rehabilitation Act and the Disability Act are hereby dismissed.

5. Defendants' motion is DENIED in all other respects.

6. The court will hold a further status and scheduling conference in this case commencing at 8:45 o'clock a.m. on Wednesday, February 3, 1999.