No. 88,286

L. JOHN PURVIS, *Appellant*, v. STEVE WILLIAMS, ROB MANES, and
ROB LADNER, *Appellees*.

(73 P.3d 740)

YALE LAW LIBRARY

Opinion filed July 25, 2003.

*Penny D. Moylan*, of Bennett, Hendrix & Moylan, of Topeka, argued the cause, and *Mark L. Bennett*, of the same firm, was with her on the briefs for appellant.

*M. J. Willoughby*, assistant attorney general, argued the cause, and *Carla J. Stovall*, attorney general, was with her on the brief for appellee.

The opinion of the court was delivered by

BRAZIL, S.J.: Plaintiff, L. John Purvis, a former conservation officer with the Kansas Department of Wildlife and Parks, brought an employment discrimination suit against department officials in their individual and official capacities (Defendants). He claimed Defendants, in terminating his employment, (1) violated 29 U.S.C. § 794 (2000) of the federal Rehabilitation Act; (2) violated federal civil rights law under 42 U.S.C. § 1983 (2000); and (3) discharged him in retaliation for exercising his rights under the Kansas Civil Service System and for exercising rights afforded to handicapped individuals. The trial court granted Defendants' motion for judgment on the pleadings and entered a memorandum decision and order dismissing all three claims. Jurisdiction is pursuant to K.S.A. 20-3018(c), transfer by court's motion.

On appeal, Purvis argues that the trial court erred in ruling that (1) he could not maintain an action under the Rehabilitation Act against the Defendants in their individual capacities; (2) sovereign immunity precludes suit in a state court under the Rehabilitation Act against the Defendants in their official capacities; (3) he failed to state a valid 42 U.S.C. § 1983 cause of action; and (4) he could not maintain an action for retaliatory discharge because he failed to exhaust his administrative remedies.

We affirm.

The parties agree that facts from Purvis' original petition are relevant. They are summarized as follows:

In July 1992, the Kansas Department of Wildlife and Parks (the Department) hired Purvis as a conservation officer. On May 14, 1999, the Department terminated Purvis' employment. Purvis alleged in his complaint, without specifying, that he had a disability or handicap and that the Department terminated him solely because of his disability or handicap. Purvis also alleged he was a permanent employee of the Kansas Civil Service System with the right to access the protections afforded by the system.

Purvis claims that he received several satisfactory or excellent performance evaluation ratings. In August 1997, he took a leave of absence for medical reasons. He claims his supervisor, Rob Ladner,

and the Department, were aware of his medical problems. In December 1997, Purvis requested shared leave pursuant to K.A.R. 1-9-23. The Department denied this request and required Purvis to return to work.

Following his return to work, Purvis claims the Defendants imposed conditions and restrictions upon him which were not necessary to the completion or performance of his job duties. Thereafter, in October 1998, Purvis received his first unsatisfactory performance rating. Approximately 6 months later, he received a second unsatisfactory rating. Shortly thereafter, on April 16, 1999, defendant Ladner, Purvis' supervisor, recommended that the Department terminate Purvis' employment.

On May 14, 2001, Purvis filed a three-count suit naming Ladner, Steve Williams, and Rob Manes as defendants, in both their individual and official capacities. He asserted claims under 29 U.S.C. § 794 of the Rehabilitation Act, 42 U. S. C. § 1983, and the common-law theory of retaliatory discharge. Defendants note in their brief that the petition does not allege that Purvis exhausted any administrative remedies before filing suit.

When Purvis was terminated, Williams was the secretary of the Department, Manes was the assistant secretary of operations for the Department, and Ladner was the regional supervisor. Defendants, through the attorney general, filed a motion to dismiss or for judgment on the pleadings. After subsequent pleadings in response and reply, the district court granted judgment on the pleadings as to all three claims.

Common to all issues is that they arise from the district court's decision granting judgment on the pleadings. A motion for judgment on the pleadings requires the trial court to determine whether, upon the admitted facts, the plaintiff has stated a cause of action. *Jack v. City of Wichita,* 23 Kan. App. 2d 606, 607-08, 933 P.2d 787 (1997) (citing *Tabor v. Lederer,* 205 Kan. 746, 748, 472 P.2d 209 [1970]). If successful, the motion can dispose of the case without a trial because the pleadings frame the issues in such a way that the disposition of the case is a matter of law on the facts alleged or admitted, leaving no real triable issue. *Clear Water Truck Co., Inc. v. M. Bruenger & Co., Inc.,* 214 Kan. 139, 140, 519

P.2d 682 (1974). The motion operates as an admission by movant of all fact allegations in the opposing party's pleadings. 214 Kan. at 140.

The district court cites the standard for summary judgment; however, neither party contends the district court relied on matters outside the pleadings. Thus, there was no need to consider the motion as one for summary judgment. K.S.A. 60-212(c).

## PURVIS' ACTION UNDER THE REHABILITATION ACT AGAINST DEFENDANTS IN THEIR INDIVIDUAL CAPACITIES

### *Standard of Review*

The district court disposed of the Rehabilitation Act claim against Defendants in their individual capacities by determining that the plain or ordinary meaning of the statute does not create personal liability. Interpretation of a statute is a question of law, and this court's review is unlimited. *Babe Houser Motor Co. v. Tetreault*, 270 Kan. 502, 506, 14 P.3d 1149 (2000). On this question the court is not bound by the decision of the trial court. *Memorial Hospital Ass'n, Inc. v. Knutson*, 239 Kan. 663, 668, 722 P.2d 1093 (1986). Although the issue involves a federal statute, it is within the power of the court to interpret it, absent any otherwise binding court ruling. *In re Estate of Tubbs*, 21 Kan. App. 2d 395, 403, 900 P.2d 865, *rev. denied* 258 Kan. 858 (1995) (citing 16 Am. Jur. 2d, Constitutional Law § 78.)

### *The Rehabilitation Act*

Section 504 of the Rehabilitation Act of 1973, 29 U.S.C. § 794 (2000) prohibits discrimination against the disabled by recipients of federal funds. The provision is enforceable through a private cause of action with remedies as prescribed in Title VI of the Civil Rights Act of 1964, 42 U.S.C. § 2000d *et seq.* (2000), which prohibits racial discrimination in federally funded programs and activities. *Barnes v. Gorman*, 536 U.S. 181, 184-85, 153 L. Ed. 2d 230, 122 S. Ct. 2097 (2002). The Rehabilitation Act states:

"No otherwise qualified individual with a disability in the United States . . . shall, solely by reason of her or his disability, be excluded from the participation

in, be denied the benefits of, or be subjected to discrimination under *any program or activity* receiving Federal financial assistance . . . ." (Emphasis added.) 29 U.S.C. § 794(a).

Under the Act, a "program or activity" is defined as the operations of "a department, agency, special purpose district, or other instrumentality of a State or local government." 29 U.S.C. § 794(b)(1)(A).

To state a cause of action of discrimination under the Rehabilitation Act, Purvis was required to allege the following elements in his petition: (1) He is handicapped within the meaning of the Act; (2) that he is otherwise qualified to perform the job; (3) that he was discharged because of his handicap; and (4) that his employer is a recipient of federal financial assistance. *Kinsella v. Rumsfeld*, 320 F.3d 309, 314 (2d Cir. 2003).

### Discussion

Purvis argued below that Defendants are liable under the Rehabilitation Act in their individual capacities because they act as instrumentalities of the state of Kansas. The district court rejected this argument by construing the Rehabilitation Act and determining that had Congress intended to include individual officials within the definition of "program or activity" as set forth in subsection (b)(1)(A), Congress would have inserted the appropriate language into the Act. In concluding Defendants, either in their individual or official capacities, did not fit within any categories of the definition, the district court further noted that the Act refers to a "program or activity receiving Federal financial assistance."

Our Court of Appeals, in *In re Estate of Tubbs*, 21 Kan. App. 2d at 404, collected authorities setting forth principles to guide a state court in construing federal statutes:

"Where possible in construing federal statutes, state courts should seek direction from the decisions of federal courts interpreting similar language. See *Lytle v. Southern Ry.-Carolina Division*, 171 S.C. 221, 224, 171 S.E. 42, *cert. denied* 290 U.S. 645 (1933), 90 A.L.R. 915. Courts should assume in the absence of indications to the contrary that Congress intends the words in its enactments to carry their ordinary, contemporary, and common meanings. *Pioneer Investment v. Brunswick*, 507 U.S. 380, 386, 123 L. Ed. 2d 74, 113 S. Ct. 1489 (1993). The unambiguous meaning of the words used within a statute must be regarded as

conclusive in the absence of a clearly expressed legislative intent to the contrary. *Reves v. Ernst & Young*, 507 U.S. 170, 177, 122 L. Ed. 2d 525, 113 S. Ct. 1163 (1993)."

The term at issue in the present case is "instrumentality." Employing a definitional analysis, Black's Law Dictionary 802 (7th ed. 1999), defines "instrumentality" as a thing used to achieve an end or purpose, or a means or agency through which a function of another entity is accomplished. The American Heritage Dictionary 681 (8th ed. 1971), defines "instrumentality" as the quality or circumstance of being instrumental. That same source defines "instrumental" as serving as an instrument; helpful, or as of, pertaining to, or accomplished with an instrument. "Instrument" is then further defined as a means by which something is done; agency, or one used to accomplish some purpose. Under this analysis, Defendants as employees or officials might meet the definition; but it is clear that Defendants, when acting in their *individual capacities*, are not acting as instrumentalities, and therefore are not a "program or activity."

Purvis argues that the following language from *Evans v. Newton*, 382 U.S. 296, 299-300, 15 L. Ed. 2d 373, 86 S. Ct. 486 (1966), should supply the definition of instrumentality: "[W]hen private individuals or groups are endowed by the State with powers or functions governmental in nature, they become agencies or instrumentalities of the State." This argument is misguided for at least two reasons. First, the *Evans* case is not on point. The *Evans* Court was applying the state action doctrine in a case challenging a segregated city park; it was not construing the Rehabilitation Act, enacted 7 years later. Second, importing the definition from a case decided decades ago violates the assumption that Congress intended the word "instrumentality" to carry its ordinary, contemporary, and common meaning.

In other words, Purvis' interpretation of the term "instrumentalities," as it is contained within the phrase "program or activity receiving Federal financial assistance," is not consistent with the ordinary meaning of the words used by Congress in the Rehabilitation Act. Therefore, the statute, 29 U.S.C. § 794, simply cannot

be construed to impose liability in this case on Defendants in their individual capacity.

The district court also relied on three cases that dismissed Rehabilitation Act claims against parties in their individual capacities. In *Castro Ortiz v. Fajardo*, 133 F. Supp. 2d 143, 150-51 (D. Puerto Rico 2001), the court surveyed the law on this issue, collecting several cases. The court concluded that while the First Circuit Court of Appeals and the United States Supreme Court have yet to decide the issue of individual liability, the majority of the circuits that have confronted the issue have held that no personal liability can attach to agents and supervisors under the Rehabilitation Act. 133 F. Supp. 2d at 150-51. Purvis attacks the *Ortiz* case and minimizes its holding. Nevertheless, it stands for the notion that individuals, in their individual capacities, are not "a program or activity receiving Federal financial assistance." Moreover, one other court has found it persuasive. See *Mitchell v. Massachusetts Dept. of Correction*, 190 F. Supp. 2d 204, 213 (2002) (following the weight of authority including *Ortiz*).

The district court also cited to *Montez v. Romer*, 32 F. Supp. 2d 1235, 1240-41 (D. Colo. 1999), and to *Moore v. Cooksey*, 2000 WL 1838274, an unpublished Tenth Circuit case. *Montez* involved a class action suit brought by prisoners with various disabilities seeking relief against the corrections department and state officials under numerous theories including the Rehabilitation Act and the Americans with Disabilities Act (ADA). *Montez* held that plaintiffs could not assert claims under either the ADA or the Rehabilitation Act against individuals in their individual capacities. 32 F. Supp. 2d at 1243. *Moore* reached the same conclusion as to the Rehabilitation Act. Though unpublished, the *Moore* court relied on *Hiler v. Brown*, 177 F.3d 542, 545-46 (6th Cir. 1999), which states that the Rehabilitation Act does not permit actions against persons in their individual capacities.

Purvis takes issue with the reasoning in the *Montez* decision by misconstruing its holding and approach. *Montez* determined that nothing in the language of either the ADA or the Rehabilitation Act explicitly authorizes or prohibits suits against individuals operating in their individual capacities. Based on this premise, the

decision sought guidance from the sections of the Civil Rights Act of 1964 which both the ADA and Rehabilitation Act invoke. The *Montez* court explained its reasoning as follows:

"Only 42 U.S.C. § 2000e-16(c) explicitly addresses the issue [of suing individuals in their individual capacities], providing in employment actions against the federal government, that the 'head of the department, agency, or unit, as appropriate shall be the defendant.' [Citations omitted.] This statutory directive suggests that plaintiffs cannot assert [ADA and Rehabilitation Act] claims against individuals in their individual capacities." *Montez*, 32 F. Supp. 2d at 1240.

Purvis' main concern in his brief about the persuasiveness of the authorities used by the district court to decide this issue is somewhat tempered by the fact the Tenth Circuit continued to cite these cases after Purvis filed his brief. See *Neiberger v. Hawkins*, 208 F.R.D. 301, 312 (D. Colo. 2002) (relying on *Montez*, *Moore*, and *Hiler*, the *Neiberger* court held that individual defendants are not subject to liability in their individual capacities and dismissed the Rehabilitation Act claim).

Purvis marshalls authority from nine federal district court cases for the proposition that some courts have held that individuals, in their individual capacities, may be liable under Title VII or the ADA. None of these cases come from the Tenth Circuit, and most do not stand for the precise proposition at issue here. One case expressly recognizes it is taking the minority view. See *Schallehn v. Central Trust and Sav. Bank*, 877 F. Supp. 1315, 1331 (N.D. Iowa 1995). These authorities are no more or less persuasive than those cited by the district court. All that Purvis has established is that jurisdictions are split on the issue.

In his reply brief, Purvis cites five additional authorities (including four from the same Second Circuit) on the individual capacity liability issue: *Robinson v. Gorman*, 145 F. Supp. 2d 201 (D. Conn. 2001); *Lee v. Trustees of Dartmouth College*, 958 F. Supp. 37 (D. N.H. 1997); *Johnson v. New York Hospital*, 897 F. Supp. 83, 86 (S.D. N.Y. 1995), *aff'd* 96 F.3d 33 (2d Cir. 1996); *Doe v. City of Chicago*, 883 F. Supp. 1126 (N.D. Ill. 1994); and *Chaplin v. Consolidated Edison Co. of New York*, 587 F. Supp. 519, 521 (S.D. N.Y. 1984). *Gorman* is not analogous and the holding was limited to the factual circumstances. That case involved a landlord-tenant

relationship where the landlords "were ostensibly in a position to accept or reject federal funds in connection with the housing program in which they and the Plaintiff participated." 145 F. Supp. 2d at 206. In essence, the individuals were the sole "program or activity."

The remaining authorities cited, in sum, are part of a small line of cases which resolve the individual capacity liability issue by focusing on the term "under" in the phrase "*under* any program or activity receiving Federal financial assistance." These cases reason that since the Act does not say, "*by* any program or activity receiving" a court is required to look at the role of the defendant employee to see if he or she is in a position to accept or reject funds or make discriminatory policy-making decisions. *Chaplin*, 587 F. Supp. at 521.

Purvis' argument, based on this line of cases, is not persuasive for several reasons. Technically, it represents a different theory of statutory construction than what Purvis presented below, and, at least arguably, should not even be considered on appeal. *Jack v. City of Wichita*, 23 Kan. App. 2d 606, 610, 933 P.2d 787 (1997). Further, the underpinning case, *Chaplin*, cited in *Johnson* and *Doe*, is considered overruled by a 1992 amendment to the Rehabilitation Act. See *Lane v. Maryhaven Center of Hope*, 944 F. Supp. 158, 164 (E.D. N.Y. 1996).

In Purvis' case, we find that the district court correctly granted judgment on the Rehabilitation Act claim for the Defendants in their individual capacities. The statutory construction rationale and the case authorities, though not binding on this court, support the district court's decision.

## PURVIS' ACTION UNDER THE REHABILITATION ACT AGAINST DEFENDANTS IN THEIR OFFICIAL CAPACITIES

### Standard of Review

An appellate court reviews the question of whether sovereign immunity has been waived de novo. *Shaw v. United States*, 213 F.3d 545, 548 (10th Cir. 2000).

### District Court Ruling

A claim against individuals in their official capacity is equivalent to a claim brought against the state. See *e.g.*, *Will v. Michigan Dept. of State Police*, 491 U.S. 58, 71, 105 L. Ed. 2d 45, 109 S. Ct. 2304 (1989). Purvis argued below that Defendants could not rely on sovereign immunity as a bar to his Rehabilitation Act claim. The district court disagreed by concluding that under the line of Kansas Supreme Court cases following *Alden v. Maine*, 527 U.S. 706, 144 L. Ed. 2d 636, 119 S. Ct 2240, (1999), Defendants, acting in their official capacities, were immune in state court from a Rehabilitation Act suit for money damages. We agree.

### Discussion

The Eleventh Amendment to the United States Constitution states:

"The Judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by citizens of another State, or by Citizens or Subjects of any Foreign State."

The concept of sovereign immunity is often and conveniently referred to as Eleventh Amendment immunity. Sovereign immunity is also considered to be inherent, existing prior to the ratification of the Constitution. See *Alden*, 527 U.S. at 712-13.

In *Alden v. Maine*, a 5-4 divided Court held that the "powers delegated to Congress under Article I of the United States Constitution do not include the power to subject nonconsenting States to private suits [based on federal law] for damages in state courts." *Alden*, 527 U.S. at 712. The case involved a suit by a group of probation officers against the state of Maine alleging Maine violated the overtime provisions of the federal Fair Labor Standards Act. See *Connelly v. State Highway Patrol*, 271 Kan. 944, 961, 26 P.3d 1246 (2001), *cert. denied* 534 U.S. 1081 (2002).

Six months after the *Alden* decision, our Supreme Court decided *Schall v. Wichita State University*, 269 Kan. 456, 7 P.3d 1144 (2000). *Schall* extensively examined the *Alden* decision, and that discussion will not be repeated here. See 269 Kan. at 463-66; Breer and Pulikkan, *Governmental Immunity: Recent Developments*

*Concerning the Eleventh Amendment and the Kansas Tort Claims Act*, 70 J.K.B.A. 24 (Aug. 2001).

*Schall* involved a suit between a terminated professor and his employer filed under the Americans with Disabilities Act (ADA), the Family Medical Leave Act (FMLA), and the common-law breach of contract theory. The employer, Wichita State University, raised sovereign immunity as a defense. 269 Kan. at 461. The immunity discussion in *Schall* concluded that Kansas has sovereign immunity from claims by individuals based on federal law even when such claims are brought in state court. *Connelly*, 271 Kan. at 961 (citing *Schall*, 269 Kan. at 466).

As noted in *Connelly*, *Schall* stated three ways immunity may be relinquished:

" 'Courts have set forth three ways that state immunity may be relinquished: (1) where the state has consented to suit; (2) where the application of *Ex parte Young*, 209 U.S. 123, 52 L. Ed. 714, 28 S. Ct. 441 (1908), and its progeny is appropriate; or (3) where Congress has abrogated the state's immunity.' " 271 Kan. at 961 (quoting *Schall*, 269 Kan. at 466).

In Kansas, the consent to suit or waiver of sovereign immunity must be based on State action meaning legislative enactments expressing the will of the elected officials and cannot be based on acts of agents. *Connelly*, 271 Kan. at 962. The relinquishment under *Ex parte Young* involves "prospective injunctive" relief. *Prager v. Kansas Dept. of Revenue*, 271 Kan. 1, 28, 20 P.3d 39 (2001). Kansas has not consented to suit under the Rehabilitation Act and Purvis' petition specifically seeks only monetary damages and attorney fees. Compare *Schall*, 269 Kan. at 466 (no consent to suit under ADA or FMLA). Thus, the only question to consider is whether Congress has effectively abrogated the State's immunity. Compare *Praeger*, 271 Kan. at 27-28.

A two-prong test is used to determine whether Congress has abrogated a state's immunity when enacting legislation: (1) Congress must unequivocally express its intent to abrogate the immunity; and (2) Congress must act pursuant to a valid exercise of its power in so doing. *Schall*, 269 Kan. at 466-67.

*Schall* found that 42 U.S.C. § 12202 (1994) of the ADA satisfied the first prong. That provision states:

"A State shall not be immune under the eleventh amendment to the Constitution of the United States from an action in Federal or State court of competent jurisdiction for a violation of [the ADA]."

*Schall* then went on to analyze the second prong, noting that the United States Supreme Court had granted certiorari in *Garrett v. University of Alabama*, 193 F.3d 1214, 1218 (11th Cir. 1999) (holding that *both* the ADA and the Rehabilitation Act are within the scope of Congressional power and that the states' Eleventh Amendment immunity was effectively abrogated). The Supreme Court reversed the Eleventh Circuit and held that the legislative record of the ADA did not support the abrogation of the states' Eleventh Amendment immunity from suits for money damages because it failed to show that Congress identified a pattern of irrational state discrimination in employment against the disabled by the States. *Board of Trustees of Univ. of Ala. v. Garrett*, 531 U.S. 356, 358, 148 L. Ed. 2d 866, 121 S. Ct. 955 (2001).

Debate continues among the circuits as to the issue *Garrett* did not review, *i.e.*, immunity against claims brought under the Rehabilitation Act. The Eleventh Circuit ultimately decided the issue on remand, holding that defendants did not waive Eleventh Amendment immunity under the Rehabilitation Act by accepting federal financial assistance conditioned on waiver. *Garrett v. Univ. of Ala. at Birmingham*, 223 F. Supp. 2d 1244 (N.D. Ala. 2002). Other circuits have reached the opposite result. See, *e.g.*, *Vinson v. Thomas*, 288 F.3d 1145 (9th Cir. 2002), *cert. denied* 154 L. Ed. 2d 772 (2003); *Robinson v. Kansas*, 295 F.3d 1183 (10th Cir. 2002) (holding Kansas waived sovereign immunity by voluntarily accepting funds under the Act).

*Garrett, Vinson,* and *Robinson* offer little guidance on the precise issue to be decided in Purvis' case because they address Eleventh Amendment immunity for Rehabilitation Act claims brought in federal court and Purvis' claim was brought in state court. The distinction between state versus federal court is significant because the provision attempting to abrogate Eleventh Amendment immunity under the Rehabilitation Act specifically mentions federal courts but not state courts. See 42 U.S.C. § 2000d-7(a)(1). But see *Prager*, 271 Kan. at 31 (citing *Alden* for the proposition that the

*usual* Eleventh Amendment exceptions to sovereign immunity applicable in federal courts apply in state courts). For this reason, *Robinson* and *Vinson* are difficult to reconcile with *Alden* and *Schall* or the continuing line of Kansas cases which have followed: *Goldbarth v. Kansas State Board of Regents*, 269 Kan. 881, 9 P.3d 1251(2000) (in § 1983 claim, administrators in their individual capacity are entitled to qualified immunity; University and Regents may assert sovereign immunity under *Alden*); *Connelly*, 271 Kan. at 957 (no waiver of sovereign immunity on First Amendment claim or § 1983 claim for damages).

With no guidance from *Garrett* on the issue, the analysis begins anew under the framework in *Schall*. As to prong one, whether Congress has unequivocally expressed its intent to abrogate Kansas' immunity in our own state courts when sued under the federal Rehabilitation Act, this court may answer that question in the negative, based on the wording of 42 U.S.C. § 2000d-7(a)(1) (2000), which reads:

"A State shall not be immune under the Eleventh Amendment of the Constitution of the United States from suit in Federal Court for a violation of section 504 of the Rehabilitation Act of 1973."

Had Congress intended to include suits in "state court" it could have included the words "state court" in the statute as it did in the comparable ADA provision, 42 U.S.C. § 12202, set forth in the preceding discussion. As further support for looking to the language of a particular statute to determine the application of sovereign immunity, the United States Supreme Court recently invoked two sound principles of statutory construction. See *Raygor v. Regents of University of Minnesota*, 534 U.S. 533, 548, 152 L. Ed. 2d 27, 122 S. Ct. 999 (2002) (holding that a federal statute of limitations does not apply for plaintiff's benefit to toll the limitations period for claims against nonconsenting states dismissed on Eleventh Amendment grounds); see also 534 U.S. at 548 n.1 (Justice Stevens calling to revisit *Alden* and joining the majority since it did not rely on *Alden*, unlike the Minnesota Supreme Court). These principles are:

(1) Under the ordinary rule of statutory construction, if Congress intends to alter the usual balance between the states and the federal government, it must make its intention to do so unmistakably clear in the language of the statute. 534 U.S. at 541.

(2) Statutes should be construed as to avoid difficult constitutional questions. 534 U.S. at 549 (Justice Ginsburg's concurring opinion).

Based on these principles, 42 U.S.C. § 2000d-7(a)(1) pertaining to the Rehabilitation Act does not reflect an unequivocal expression of Congress' intent to waive a state's sovereign immunity against Rehabilitation Act claims brought for money damages in state court. See August 4, 1986, Senate Report ("It would be inequitable for Section 504 to mandate state compliance with its provisions and yet deny litigants the right to enforce their rights in *Federal* courts when State or State agency actions are at issue.") (Emphasis added.)

### Parties' Arguments

In his reply brief, Purvis argues that Defendants' acceptance of federal funds waived sovereign immunity on the official capacity claims under the Rehabilitation Act. He bases his contention on *Robinson v. Kansas*, 117 F. Supp. 2d 1124, 1134 (D. Kan. 2000), since affirmed by the Tenth Circuit, 295 F.3d 1183 (2002). Recently, the petition for certiorari was denied. 123 S. Ct. 2574 (2003). Defendants suggest this issue should not be addressed. However, immunity is actually a question of jurisdiction which can be raised at any time. *Connelly*, 271 Kan. at 962 (following *Goldbarth*).

In *Robinson*, plaintiffs claimed the Kansas Board of Education waived its immunity by accepting funds under the Rehabilitation Act. The Tenth Circuit agreed and held that Kansas has waived its sovereign immunity with respect to the claims against it for violation of the Rehabilitation Act. Purvis' over-reliance on *Robinson* is initially understandable. However, the persuasive effect of *Robinson* as applied to Purvis is limited for three apparent reasons: (1) The precise wording of the holding quoted above oversteps the facts of the case. The Rehabilitation Act claim was brought in federal court, where only Eleventh Amendment immunity is at issue,

not sovereign or inherent immunity. (2) *Robinson*, unlike Purvis' case, involves a claim for prospective injunctive relief. (3) *Robinson*, in its present posture, cannot be reconciled with *Alden* and the related line of Kansas cases. Those reasons notwithstanding, there is some appeal, at least to the federal courts, in reasoning under contract principles, that a state's acceptance of Rehabilitation Act funds comes with conditions to waive immunity. See, *e.g.*, *Killcullen v. New York*, 205 F.3d 77 (2d Cir. 2000) (discussing the points and counterpoints of arguing conditional acceptance of federal funds and waiver of immunity).

Defendants do not take issue with the reasoning of the district court. The district court analyzed *Alden* and extended its holding based on the line of cases recently decided by this court. Following these decisions, the district court did not err by ruling that sovereign immunity precludes suit in state court for monetary damages under the Rehabilitation Act against Defendants in their official capacities.

## PURVIS' 42 U.S.C. § 1983 CAUSE OF ACTION

Before the district court, Purvis conceded in his response to Defendants' motion to dismiss or for judgment on the pleadings that his § 1983 claims against Defendants in their official capacities were barred because in their official capacity, they are not "persons" within the meaning of § 1983. Likewise on appeal, he only claims that he stated a valid § 1983 claim and he is entitled to bring the claim against the Defendants in their individual capacities.

To state a valid claim pursuant to 42 U.S.C. § 1983, Purvis' petition must allege two essential elements: (1) whether the conduct complained of was committed by a person acting under color of state law, and (2) whether this conduct deprived a person of rights, privileges, or immunities secured by the Constitution or federal law. The provision itself is not a source of rights, but rather a method for vindicating other federal rights conferred elsewhere. *Prager*, 271 Kan. at 11-12.

A plaintiff alleging a violation of a federal statute is permitted to sue under § 1983 unless (1) the statute does not create enforceable rights, privileges, or immunities within the meaning of § 1983; or

(2) Congress foreclosed such enforcement of the statute in the enactment itself. *Wilder v. Virginia Hosp. Assoc.*, 496 U.S. 498, 508, 110 L. Ed. 2d 455, 110 S. Ct. 2510 (1990).

Purvis alleged that Defendants, acting under color of state law, deprived him of his right to be free of discrimination on the basis of handicap or disability as guaranteed by the Rehabilitation Act. Under the first test in *Wilder*, the Rehabilitation Act creates an enforceable right to bring suit against a "program or activity" for discrimination based solely on a disability. Since we agree with the district court that an individual, in their individual capacity, is not a "program or activity" as that term is construed in our previous discussion, then Purvis had no enforceable right under the Rehabilitation Act to vindicate under a § 1983 claim. Thus, the district court correctly granted judgment on this claim. Further, as Defendants point out, a line of cases hold that § 1983 plaintiffs are barred in some jurisdictions from bringing an action under the Rehabilitation Act against a state official in his or her individual capacity on the alternate theory that the claim is barred by the comprehensive remedial scheme of the Act. See, *e.g., Vinson v. United States*, 288 F.3d 1145.

## PURVIS' ACTION FOR RETALIATORY DISCHARGE

### Standard of Review

The district court dismissed Purvis' retaliatory discharge claim because it found that he had failed to exhaust his administrative remedies with the Kansas Civil Service Board. Whether a party is required to or has failed to exhaust administrative remedies is a question of law over which appellate review is unlimited. *Sandlin v. Roche Laboratories, Inc.*, 268 Kan. 79, 82, 991 P.2d 883 (1999).

### Discussion

Purvis conceded to the district court and admits in his brief that he did not appeal his dismissal under the relevant provisions of the Kansas Civil Service Act, K.S.A. 75-2925 *et seq.* (KCSA). Specifically, the KCSA provided Purvis 30 days to appeal the "reasonableness" of his dismissal to the Kansas Civil Service Board. See K.S.A. 75-2949(f) (amendments not relevant). In disposing of the

retaliatory discharge claim, the district court relied on *Pecenka v. Alquest*, 232 Kan. 97, 99, 652 P.2d 679 (1982). In that case, the court held that the KCSA provides a complete procedure for administrative review in cases where an employee in the classified service of the State complains of a wrongful dismissal. Under *Pecenka*, a dismissed employee is required to exhaust all administrative remedies before bringing an independent action to challenge the dismissal. 232 Kan. at 100. See also *Parker v. Kansas Neurological Institute*, 13 Kan. App. 2d 685, 778 P.2d 390, *rev. denied* 245 Kan. 785 (1989) (construing and applying *Pecenka* in wrongful discharge case based on discrimination).

This court recently considered *Pecenka* in *Prager*. *Prager* reaffirmed the merits of *Pecenka* even while holding no exhaustion of remedies was required. 271 Kan. at 11. However, the "independent action" in *Prager* was a federal claim brought under 42 U.S.C. § 1983 with a body of United States Supreme Court law to consider. Such is not the case here since Purvis has brought a Kansas common-law claim for retaliatory discharge.

In the present case, the district court correctly determined that Purvis was required to pursue his administrative remedies for wrongful discharge under the KCSA before he had the right to bring the district court action for retaliatory discharge. A Board hearing investigates the reasonableness of the employee's dismissal. As a permanent employee in the classified service, Purvis could not have been dismissed "for political, religious, racial or *other nonmerit reasons*." See K.S.A. 75-2949(a).

Purvis never addresses why the exhaustion of remedies principle as articulated under *Pecenka* does not apply to his case. Instead, he attempts to invoke the alternative remedies doctrine and draw the court into an adequacy of remedy analysis comparing the Kansas remedies under the Civil Service Act with retaliatory discharge. See generally, *Flenker v. Williamette Industries, Inc.*, 266 Kan. 198, 202-03, 967 P.2d 295 (1998) (alternative remedies doctrine, referenced sometimes as preclusion, and which is a substitution of law concept, is applied to OSHA remedy and retaliatory discharge). Such an analysis is unnecessary if *Pecenka* and *Prager* are read together. *Pecenka* is the rule, *Prager* is the exception. Purvis' re-

taliatory discharge claim sounds in Kansas common-law and is subject to Kansas policy favoring at-will employment except for a few carved out policy exceptions.

The district court did not err by granting Defendants judgment on the retaliatory discharge claim on the basis that such an action cannot be maintained when the plaintiff fails to exhaust his administrative remedies. Purvis' argument that the statutory remedy under the KCSA is inadequate attempts to unnecessarily invoke the alternative remedies doctrine and is without merit.

Affirmed.

ABBOTT, J., not participating.

BRAZIL, S.J., assigned.